Baldwin, J.
The jurisdiction of a court of probat differs from that of other civil tribunals in this, that its province is not to ascertain and enforce the rights of property, but to establish, preserve and perpetuate some important muniment of title. When that is a testamentary paper, the decision of the probat court must, of necessity, be judicial in its character; inasmuch as the validity of the instrument involves not merely its formal execution, but also the capacity, freedom and final action of the testator. In regard to such a subject, it is obvious that the full benefit to the community derivable from the probat forum cannot be enjoyed, unless its adjudications be treated as final and conclusive by the other judicial tribunals.
In England, the probat of wills of personalty is exclusively vested in the ecclesiastical courts: they alone have cognizance of the validity of the instrument; and their decision cannot be questioned in the other courts, whether of common law or equity. When therefore a will has been admitted to probat in the ecclesiastical court, no suit can be successfully prosecuted by persons claiming as distributees, on the supposition of intestacy; the sentence of the probat court being conclusive evidence to the contrary, and unimpeachable in any other forum, either directly or collaterally. A like consequence would follow in England, if the probat jurisdic *77 tion extended to wills of realty. The admission of the will to probat would preclude the heir at law from controverting the validity of the instrument, hie could not maintain an action of ejectment to recover the property devised, on the ground of intestacy, nor could he prosecute a bill in equity to set it aside, upon the allegation of fraud, insanity or want of due attestation.
But in England there is no court of probat for wills of realty; and consequently the validity of the instrument must be decided incidentally in controversies concerning the rights of property, claimed under or against it. These controversies must be settled in the appropriate jurisdictions. The title of the heir is in its nature legal, and may be asserted in an action of ejectment ; and he cannot go into equity for any other purpose than to remove impediments to a full and fair trial at law. If the devisee has the legal title, he may, and the better opinion seems to be, must, in most cases sue at law. But there are various heads of equitable jurisdiction which may enable him to assert his claim in a court of equity. He cannot however obtain relief there, without the verdict of a jury in his favour, upon the issue of devisavit vel non, if such a trial be required by the heir at law.
In Virginia, the probat jurisdiction embraces wills both of realty and personalty. By our act of 1711, directing the manner of granting probats of wills and administration of intestates’ estates, jurisdiction was given to the county courts to hear and determine all causes, matters, suits and controversies testamentary, and to examine and take the proof of wills, and grant administration upon the estates of intestates. It provides that when a will devising lands shall be offered for proof, the court shall appoint a time for proving it, and cause the heir or heirs to be summoned to appear and be present, and to shew forth any thing that may be lawfully alleged against such proof; with a saving in favour of *78 all persons concerned in interest labouring under disabilities; who were to have liberty to contest the said proof at any time within ten years after their several disabilities should be removed; and at no time after the sa^ ten years- It also gave the like jurisdiction to take the proof of wills and grant administrations to the general court, in certain cases.
The act of 1744, to amend the law for proving wills in the general court and county courts, recites that the proof of wills where lands are devised away from the heir or heirs at law, is attended with inconvenience to the executors and losses in the personal estate ; and provides that when wills are exhibited to be proved, it shall be lawful for the courts to proceed immediately to the proof of such wills: but that where lands of the testator shall be devised away from the heir or heirs at law, such proof as to them shall not be binding; but that they shall be summoned in the manner directed by law, and shall be at liberty to contest the validity of such will in the same manner as if this act had never been made. These provisions were incorporated into the revised act of 1748: and it will be seen that the effect of them was to authorize the ex parte probat of wills, both of personalty and realty; but that in regal'd to the latter, the heir or heirs at law were, notwithstanding, to be summoned, and thereupon to have the privilege of contesting the validity of the will, and requiring a reprobat thereof.
The revised act of 1785, after prescribing the general probat jurisdiction of the county, city, corporation and general courts, provides that “ when any will shall be exhibited to be proved, the court having jurisdiction as aforesaid may proceed immediately to receive the probat thereof, and grant a certificate of such probat: If however any person interested shall, within seven years afterwards appear, and by his bill in chancery contest the validity of the will, an issue shall be made up, *79 whether the writing produced be the will of the testator or not; which shall be tried by a jury, whose verdict shall be final between the parties; saving to the court the power of granting a new trial for good cause, as in other trials; bnt no such party appearing within that time, the probat shall be forever binding: In all such trials by jury, the certificate of the oath of the witnesses at the time of the first probat, shall be admitted as evidence, to have such weight as the jury shall think it deserves.” The provisions of this act of 1785 are still continued in our code, with a saving in favour of those labouring under disabilities, and an extension of the original probat jurisdiction to the superior courts of law.
The obvious purpose of these provisions is, 1. To recognize the ex parte probat of wills, both of realty and personalty; 2. To extend the privilege of requiring a reprobat, so as to embrace both; 3. To prescribe a period of limitation for such reprobat; 4. To change the citation for reprobat, so as to require it to be of those interested in sustaining the will, instead of those interested in opposing it; 5. To shift the final probat from the court of original probat to the court of chancery, to be there exercised by the instrumentality of a jury; 6. To provide against the loss of testimony in support of the will, which might result from the delay of the final probat, by authorizing, for the consideration of the jury, documentary evidence of the proof at the first probat.
This brings us to the question, whether it is competent for the plaintiffs to prosecute their present suit, not merely for the purpose of contesting the validity of the will, upon the final probat before a jury; but moreover for the purpose of enforcing their claims to the property as heirs and distributees of the decedent.
It is clear from what has been already said, that if the whole probat jurisdiction had remained in the courts of law, the heirs and distributees of a decedent could not have maintained a bill in equity, to impeach directly the *80 validity of a will there admitted to prohat; or to bring it into question incidentally by claiming the property thereby disposed of. How then does the court of chañceiT obtain jurisdiction over the property, by the transfer to that forum of the final prohat of the instrument ? 4 The only effect of a verdict against the will, upon the issue of devisavit vel non, would be to place the rights of property in the same situation as if the will had never been made. But in that state of things, the remedy of the heirs at law to recover the realty would be an action of ejectment: and in regard to the personalty, the distributees would have no right to recover it. The title and right of action in regard to that belongs to the administrator, first for payment of debts, and then for distribution of the surplus amongst the next of kin. It is true, there are cases in which the distributees may obtain relief in equity against a stranger, who is about to waste or eloign chattels of the estate in his possession, before a grant of administration can he obtained. But that equity can have no application to a case in which there is a responsible executor, who has duly qualified and given security, though his powers may be liable to future revocation.
The most that can be said in behalf of the ulterior relief sought by the plaintiffs is, that the court of chancery having obtained jurisdiction of the subject, for the purpose of deciding upon the validity of the instrument, it ought to go on to administer complete justice between the parties, instead of turning them round to another action, whether in the same or a different forum. But this is founded upon the supposition, that the court of chancery has obtained jurisdiction of the subject as a court of equity. Such, however, is not the fact: its jurisdiction is merely that of a court of prohat; and to be exercised not by the court, hut by a jury under its supervision ; and for the decision of a common law issue affecting the legal rights of the parties.
*81 Besides, the ulterior jurisdiction claimed for the court of chancery is not founded upon the circumstances ex-is ting at the institution of the suit, but is merely prospective and contingent, and of course supplemental. It must therefore be asserted in a new proceeding, whether an original or supplemental bill is foreign to the present question. It is in some respects impossible, and in others extremely difficult, to frame the probat bill, so as to adapt it to the new aspect of the case which will be presented by the exercise of the probat jurisdiction. If the will should be vacated, an administrator of the personal estate must be first brought into existence before he can be brought into court. The real estate may be in the possession of the defendants claiming as devisees, or in the possession of the plaintiffs claiming as heirs at law; or a part in the possession of the defendants, and a part in the possession of the plaintiffs. The possession of the defendants may continue adversary, notwithstanding the vacation of the will; for they may deduce another title from the decedent in his lifetime, or a paramount title from a stranger. Or the possession may become social in both defendants and plaintiffs, as coheirs of the decedent, and require a partition, with an account of rents and profits and advancements.
How can all such matter be introduced by anticipation into the prohat hill? And yet it must be introduced into the cause, in some form or shape, with a view to the ulterior relief: and that not merely at the election of the plaintiffs, for if the defendants have interests notwithstanding the vacation of the will, they will have an equal right to assert them. How, I ask, can such cumbrous and expensive, and in one event utterly useless and idle machinery, be properly brought into a proceeding intended by the legislature to present, upon a final probat, the simple and naked question, “whether the writing produced be the will of the testator or not ?”
And what arc the considerations of policy to recommend *82 it ? What expense will be avoided, what delay prevented, what inconvenience removed ? None that I can conceive. It can only lead to a protracted and perplexed litigation, requiring a change of pleadings, and it may of the relative attitude of parties: whereas a simple sentence of the court, declaring the result of the verdiet, puts an end to the original controversy; leaving the parties to an amicable adjustment of their respective interests in the subject, or to the plain and appropriate remedies, at law or in equity, suggested by then existing circumstances.
It seems to me, therefore, that the circuit court did not err in dismissing, by its interlocutory decree, the bill of the plaintiffs, as to the defendant Leigh in his individual right and capacity; he having, prior to the institution of the suit, released the devises and bequests in his favour contained in the testamentary papers propounded : but that the decree ought to have gone further, and dismissed so much of the bill as seeks relief beyond the vacation of those instruments. As to the costs awarded to the defendant Leigh, incurred by him in his individual right and capacity, I do not perceive how it is practicable to discriminate between costs so incurred, and costs incurred by him in his character of executor. In fact they are identically the same; and it being manifest that the court did not intend to give him costs in his representative character, I cannot but regard so much of the decree as relates to his costs as merely nugatory.
We are next to consider whether the duty prescribed by the statute of making up an issue for the final pro-bat of the will, has been correctly performed by the interlocutory decree in question. And upon this subject we need not look much further than the terms of the statute. It directs that an issue shall be made up, and specifies what the issue shall be, to wit: “ whether the writing produced be the will of the testator or not *83 which is the issue that the jury are to be sworn to try. This is the substance of the matter, and any thing more is nothing but form. Whatever route may be taken must inevitably terminate at this point. Now this is the very issue which has been made up; and whether by the hands of the court, or of a master in its service, or by the elaboration of counsel through the details of special pleading, I regard as wholly immaterial. Still the issue has been made up, and it is the precise issue required by law. We may, if we choose, look into the books of practice, to ascertain the mode of making up such an issue in the English chancery ; but that is more a matter of curiosity than utility, for there they have no statute on the subject, and we must at last come back to the true construction of our own.
The court, it is true, might in its discretion have indulged the counsel concerned in the circuity of feigned (though with us most usually supposed) common law pleadings; but no advantage could have been gained by professional skill and dexterity in that mode of proceeding ; for still the issue, however formal, must have been settled, as in the English practice, by agreement of the parties, or the authority of the court; in fact, the true point of controversy in the court below was neither the form nor the substance, but the affirmative of the issue ; each party seeking to he plaintiffs therein, in order to obtain the advantage of opening and concluding the cause before the jury. The court, in my opinion, properly awarded the affirmative to the appellees, they being the propounders of the will, and having the burthen of maintaining not only the due execution thereof, but the capacity, freedom and final action of the testator, and the continued validity of the instrument in all respects. Whatever formal affirmatives may be arrayed by the appellants against the proposition incumbent on the appellees, that the writings produced are the true last will and testament of the testator, they do in sub *84 stance only negative the presumptions in law, or proofs in fact of the requisites to the validity of the instrument.
As to the defendant Henry St. George Tucker, I think interlocutory decree very properly permits him to sustain either side of the issue, at his election; thereby adopting the principle of the English practice, by which a defendant in the cause who has conflicting interests, and therefore declines to become a party in the issue, is allowed to attend the trial, and is held bound by the result.
The remaining objection to the decree taken by the appellants is, that it directs the issue to be tried on the chancery, instead of the common law side of the court. This question is, I think, unaffected by the present union of the two jurisdictions in the same court, inasmuch as they are in nowise blended; and it ought to receive the same consideration as if they had never been so united. The statute of wills we have been considering is silent, it will be seen, in relation to the forum in which the required issue shall be tried; and if the question turned upon the meaning of that statute alone, the inference would seem to be that the forum was to be in the discretion of the chancellor, or, if not so, that he was of necessity to be confined to his own. But I think the question is to be determined by another statutory provision, to be found in the 47th section of the revised act of 1819, concerning the superior courts of chancery, which enacts that “ the said courts in their discretion, may direct an issue to be tried whenever it shall be judged necessary, either in those courts, or in any other courts whatsoever, as justice or convenience to the parties may require.” Now, I presume, it will hardly be supposed that the authority here given in relation to the forum for the trial of an issue is confined to those cases in which the court has a discretion whether an issue shall be directed, to the exclusion of others in which *85 the law has exercised, its own discretion, but without designating where the issue shall be tried. Such surely is not the spirit of the act, which was obviously intended to embrace in the discretion as to the place of trial all issues lawfully directed by the chancellor, whether dictated by his own judgment or the mandate of the law.
There is, moreover, no incongruity or inconvenience in having the trial of the issue at the chancery bar. The equitable becomes for the occasion a legal forum, and the proceedings are according to the course of the common law. In practice, the mode of saving questions decided by the judge during the trial, is the same as in common law actions, to wit, by bill of exceptions: but there is no statutory remedy in case the judge should refuse to allow an exception. This, however, is equally true, whether the issue be tried in a court of common law, or a court of chancery; for the Stat. of Westm. 2, 13 Edw. 1, ch. 31, adopted into our code, applies only to common law actions, and not to mere issues directed by a chancellor, in which no judgment is rendered upon the verdict, but the verdict merely certified for the action of the chancellor thereupon .in the chancery cause. Errors committed on the trial of the issue cannot be reached directly by an appellate forum, but must form the subject of a motion to the chancellor, in the chancery cause, for a new trial; and if improperly refused by him, an appeal lies from his decree. In common law actions, if the judge should refuse to seal a true bill of exceptions, the remedy is by complaint to a higher court, and a writ founded on the statute. But such refusal on the trial of an issue out of chancery would be matter for a motion to the chancellor for a new trial, and if refused, for an appeal from his decision.
My opinion, therefore, is, that there is no error in the decree of the circuit court to the prejudice of the appellants : and we are now to enquire whether there be any requiring correction to the prejudice of the appellees.
*86 In the first place, did the court err in refusing a direction to permit the defendant Leigh to be examined as a witness in behalf of the appellees, on the trial of the issue, and referring that question to the decision of the íu<^§e w^° preside at that trial ? This involves the consideration of the defendant Leighs competency as a witness to sustain the validity of the will.
The rules governing the admission and exclusion of evidence are drawn from considerations of expediency and policy, in the investigation of controversies, with a view to the attainment of truth. The incompetency of witnesses therefore is founded upon a strong probability, arising from the situation in which they are placed, that they will not tell the truth, and that their testimony will tend to establish what is false. Now, a rule of incompetency to be of any value must be fixed and certain, and yet being based only upon probability, its beneficial operation must of necessity, in any given case, he more or less uncertain. The attempt to exclude all witnesses, liable, from their relation to the subject or the parties, to improper bias, would break up the fountains of justice ; and therefore the principle of exclusion must, in the nature of things, be confined within narrow limits. Our law recognizes none of a relative character, except that of a pecuniary interest in the result of the controversy; and as there can be no graduation of the amount, its effect upon the question of competency must be the same, whether it be great or small. And yet it is obvious that a small, or even great pecuniary interest, must often have a less tendency to improper bias than other circumstances, appealing to the affections or passions of the witness. Nor can it be denied that when the rejection of a witness occasions darkness instead of light, the mischief is irreparable; whereas his credit, when received, is fully open to consideration, discussion and evidence. Such reflections, doubtless, have led the courts of late years to restrain *87 objections to competency within the narrowest bounds practicable, consistently with a due respect to authority, and the preservation of a proper decorum in the administration of justice.
To render a witness incompetent, his interest in the result of the cause must be direct and certain; not uncertain, contingent or conjectural. A liability to actions as a consequence of the decision is nothing, unless he be moreover liable to a recovery, which liability must be apparent, and not assumed upon a suppositious state of facts. His interest that is to be affected must be personal, or if representative, must be asserted by him as the owner of the estate or subject against an adversary interest.
An executor, in his transactions as such with the world, is the representative and legal owner of his testator’s personal estate, responsible for its due administration, identified with its interests, and bound to assert and defend them. He cannot be a witness for himself in controversies with strangers affecting the interests thus vested in him. Nor when ho is called to account as a trustee, by his cestuis que trust, can he testify against them in relation to the measure or extent of his responsibility. But what good objection can there be to his competency amongst the cestuis que trust themselves, or between two classes of persons, each claiming the interests rightfully belonging to cestuis que trust ? The estate which he represents is in nowise interested in such a contest. Nor has he himself any personal interest in it. The question is, not for what or for how much, but to whom he shall account, and that in a pecuniary point of view must be to him a matter of perfect indifference.
In the case before us, judge Leigh is precisely in the situation just noticed. The appellants claim as the distributees and heirs at law of Mr. Randolph: the appellees as his legatees and devisees. The witness, as the *88 duly qualified and acting executor of the decedent, has taken possession of the personal estate, and made some progress in its administration. And now, in this controversy between those claiming against, and those claim-*n§ under the will, he is offered as a witness for the latter. Representative interest he can have none against either party. Where is his personal interest? If the will be set aside, he will have to surrender the personal estate in his hands to his successor, and account for his administration; and if it be confirmed, he will ultimately have to perform the like duty.
It is urged that the measure and extent of his accountability would be different in the two cases: but I can perceive no difference. His acts as executor would not be rendered unlawful by a subsequent vacation of the will. On that subject, I think it would be a waste of time to go into a discussion of the English authorities. We need no better guide than our own statute law, which seems to me free from all difficulty. The will was duly admitted to probat by the competent jurisdiction, which judicially declared it to be the last will and testament of the alleged testator. The executor therein named was recognized as such by that tribunal, took the oath of office, and gave bond and security for the faithful discharge of its duties. Though a verdict and sentence against the validity of the will, in the present proceeding, will terminate his authority ; yet until then he will have acted under a lawful authority; and I consider his intermediate acts valid, as much so as those of any other executor. What responsibilities he might have incurred, by improper conduct in procuring the execution of the will, or by payment of legacies after notice that its validity would be disputed, are questions not presented by the record in the present case. He surely could not be entitled in any event, as suggested, to retain the hires of the emancipated slaves accruing during their continuance in bondage.
*89 As to his losing the office of executor by a vacation of the will, it is no loss in the eye of the law, which regards it, not as a lucrative employment, but as an onerous engagement, accepted from different considerations than pecuniary emolument. His commissions are designed merely to reimburse him for his labour and expenses ; and if he should lose them prospectively, he will at the same time be relieved from the services and responsibilities for which they are allowable. In regard to those already accrued, together with his legal costs and reasonable charges occasioned by the present controversy, I cannot doubt, whatever may be the result, that he will have a right to retain them out of the estate, except so far in relation to costs as they may be recovered against the complainants. As to the costs incurred by the latter, they are not, under the circumstances, recoverable against him de bonis propriis.
Upon this question of judge Leigh’s competency, numerous authorities were cited in the learned and able discussion at the bar. It would be tedious to notice them particularly, but I deem it proper to make a few general remarks upon the principles which they involve, in addition to what has been already said.
It is well settled that in actions at law a party to the record cannot be examined as a witness against his adversary, for though his interest in the subject of controversy may be merely formal, yet he has a substantial interest in regard to the costs. This is equally true, whether his testimony be offered in behalf of himself, or of an associate; for the interest of coplaintiffs and codefendants is at law strictly joint. But the rule is not altogether free from exception. There may be cases, however rare, in which a party to the record has no interest whatever, either in the subject of controversy, or the costs of the action. In such cases, the reason for his incompetency ceases, and he may be examined. The reasoning, rather than the decision of the supreme court *90 of the United States in Stean v. Bowman, 13 Pet. 219, is opposed to this idea. But with great deference, it seems to me that some of the views of the court in that case are at war with established principles, and tend to conf°im(^ objections to the competency with those which go only to the credit of a witness. The true doctrine is, I think, correctly laid down by lord chief justice Tindall, in Worrell v. Jones, 20 E. C. L. R. 177, in which he says: No case has been cited, nor can any be found, in which a witness has been refused upon the objection in the abstract, that he was a party to the suit. On the contrary, many have been brought forward in which parties to the suit who have suffered judgment by default, have been admitted as witnesses against their own interest; and the only enquiry seems to have been in a majority of the cases, whether the party called was interested in the event or not, and the admission or rejection of the witness has depended on the result of this enquiry.
In equity, though the interest of coplaintiffs is joint, that of codefendants is not always so ,• on the contrary it is sometimes conflicting, and one or more of the defendants may not be in hostility with the plaintiffs. A plaintiff, therefore, may examine a defendant, or one defendant a codefendant, if the witness be not substantially interested in the result. The costs in equity being discretionary with the court, it is extremely difficult, if not impracticable, to attribute to a party a fixed and determinate interest on that head alone. Accordingly, though the rule of incompetency, because of a liability for costs, is generally recognized, there is some confusion and conflict in the authorities bearing upon its application. Various criteria have been resorted to, such as the charges in the bill, the evidence in the cause, the participation in an alleged fraud or combination, the liability to a decree, &c. These need not be further noticed in a case like this, in which it is morally impossible, ac *91 cording to the shewing of the complainants, that the witness can be subjected to costs. And if he be incompetent, it must be because of his interest in the subject.
In England, until the statute 1 Will. 4, ch. 40, the executor, in default of a residuary legatee, was entitled to the surplus, unless the testator’s intent to the contrary appeared: an interest which of course rendered him incompetent in cases involving the validity of the will. When not entitled to the surplus, he is a trustee for the next of kin, or residuary legatee, as the case may be; and then, and so when a devisee of property, real or personal, for the benefit of others, he is called an executor in trust. Such is the character with which he is clothed in the present case: and his iucompetency, if it exists, arises altogether out of his having accepted and partly performed the trust; there being no special circumstances in the case, and he having released all interests in the estate given him by the will. Now, the question of the competency of an executor in trust, is, as already shewn, widely different, where the controversy is between the estate which he represents, and others claiming adversely to that estate; and where the controversy is between persons claiming, not adversely to the estate, but conflicting interests therein. So, too, there is a wide difference between the latter case, and one in which the cestuis que trust of the estate call the executor to an account, and the controversy is to the amount which they ought to recover. Let us first notice the doctrine applicable to controversies with the estate alone, or with the executor alone.
It is laid down broadly in the books, that in actions at law an executor in trust is a competent witness as to the trust estate, and may prove the sanity of the testator : but this must be taken in reference to controversies in which he is not a party; for if he is a party to the record, he is usually disqualified by his interest in the costs, if not in the subject; and though not a party to *92 the record, yet if the recovery or defence is to enure to him as executor in trust, I presume he is incompetent, as the substantial, though not the formal party.
In equity, it has been in some cases said, and in others that though a trustee is, an executor in trust is not, a competent witness to increase the assets of the estate, though sued for, or sought to be subjected by another; and that there is a difference between the rules of law and equity in this respect. Croft v. Pyke, 3 P. W. 180 ; Bellew v. Russel, 1 Ball & Beat. 99 ; Mulvany v. Dillon, 1 Ball & Beat. 409. If this be so, it presents the strange anomaly of a rule excluding light, more rigorous in equity than at law. In Fotherby v. Pate, 3 Atk. 604, lord Hardwicke held, in a suit brought for an account of the assets, against an executor, and the administratrix durante minore estate who had not accounted with the executor, that the administratrix could not be a witness for the executor; and adverts, though rather disapprovingly, to the supposed distinction in equity, not existing at law, between a trustee and an executor in trust. These authorities, it will be seen, have no application to a case like the present, in which the question is not as to the amount of assets, nor the accountability of the executor therefor.
We come now to the doctrine in controversies between conflicting claimants of the estate itself, each deriving title from the decedent. And here the appellants have been unable to produce any authority to shew that an executor in trust is incompetent, by reason of his interest in the subject. On the other hand, there is strong authority in favour of the appellees.
The case of Lowe v. Joliffe, 1 W. Bl. 365, I regard as directly in point. That was an issue devisavit vel non directed out of chancery. The executor in trust, who drew the will, was examined as a witness to prove the sanity of the testator, though objected to 1st. as being an executor in trust, and so liable to actions ; and *93 2dly. as having acted under the trust. He was authorized by the will to sell real estate, and had actually sold part of it, by which he became liable to answer in damages to the purchaser, if the will was set aside. The court overruled the objection. Lord Mansfield said there was no difference between an executor in trust and another trustee, and that his being liable to actions made no difference. He was examined, and with the aid of his testimony the will was established, against the positive evidence of the subscribing witnesses, and a dozen others, all of whom were grossly and wilfully perjured. The case presented the naked question, whether the executor in trust was rendered incompetent by reason of his interest in the subject, without being embarrassed by the form of the proceeding, or an objection on the ground of an interest in the costs. It arose, as it arises here, on a common law issue, but not in a common law action, inasmuch as no judgment could be rendered in the forum where the trial was had. The authority of the case is not at all shaken by the decisions cited on the part of the appellants.
The case in Massachusetts of Sears v. Dillingham, 12 Mass. R. 368, was expressly founded upon the liability of the executor for the costs of the proceeding, under a statute of that state. The case in Pennsylvania of Vansant v. Boiliau, 1 Binn. 444, turned also upon the like liability for costs, occasioned by the form of the proceeding; it being the province of the court in which the issue devisavit vel non was tried, to render judgment upon the verdict. And a venire de novo being awarded by the appellate court, it was there suggested by one of the judges, that the court below ought so to modify the issue as to remove the objection to the witness, in order that “justice should not be entangled in a net of forms.” The case in South Carolina of Vinyard v. Brown, 4 M’Cord 24, was very much like the one before us; but the grounds of the decision deprive it of *94 all weight. The court there went partly upon the idea of an interest of the witness in the costs, but chiefly upon a supposed rule of policy excluding a party in' a cause as incompetent, under all possible circumstances.
The ecclesiastical courts, it is true, hold an executor who voluntarily propounds a will an incompetent witness in the probat cause; but they treat him as liable for costs, unless under special circumstances. With us, if an executor propounds a will in the original court of probat, which is rejected as invalid, the general rule is that costs will not be awarded against him. Spencer v. Moore, 4 Call 423; Wilcox v. Rootes, 1 Wash. 140. Whether he would be a competent witness on such propounding is a question which does not arise in the present case. The question is a very different one, when he is brought into court, with those interested in the estate under the will, upon a bill filed for final probat.
My opinion is that judge Leigh, so far as at present disclosed by the record, is a competent witness for either party on the trial of the issue. I do not know that, as a general rule, I would be willing to reverse a decree upon the solitary ground, that the chancellor had referred the question of competency to the judge who shall preside on the trial of the issue, instead of directing the examination of the witness. But, under the peculiar circumstances of this case, I think he ought to have given the direction; and that the decree ought to be corrected in that particular.
Another objection to the decree made by the appellees, is its omission to direct the deposition of judge Ldgh, given on the probat in the general court, to be read on the trial of the issue, in the event of his death or inability to attend the trial. But that involves a grave question as to the admissibility of such evidence, which I do not deem it incumbent on us now to decide; inasmuch as its decision in the cause may be rendered unnecessary, not only by the personal attendance of the witness on *95 the trial, but by the precaution on the part of the appellees of taking his deposition de bene esse.
The remaining objection to the decree, urged by the appellees’ counsel, is that the complainants ought to have been required to make the slaves emancipated by the will, defendants in the cause. This objection I deem clearly untenable. The race of people to which those persons belong is, by our laws, 'prima facie in a state of bondage here, and none but physical means can be necessary to enforce the rights of owners. The humanity of the law has given them, when entitled to freedom, the right to sue in forma pan,peris ; and has surrounded this privilege with every precaution and safeguard. It moreover permits them to resort, in the character of petitioners or plaintiffs, to the proper tribunals, for the establishment of their documentary evidence of title. The capacity of being sued on the question of their condition is incongruous therewith; would confer no privilege or benefit upon them; would derogate from the title of the master, and occasion much inconvenience to estates, and in the administration of justice.
The other judges concurred in the opinion of Baldwin, I. and the cause was remanded with instructions accordingly.