## CHARLESTOWN.

NICHOLAS *et al.* v. KERSHNER *et al.*

Submitted January 19, 1881—Decided September 1, 1882.

(*SNYDER, J., Absent.)

1. The 2d, 3d, 5th, 7th, 8th, 10th, 11th points of the syllabus, in *Jarrett* v. *Jarrett*, 11 W. Va. 584 affirmed in this case. (p. 255.)

2. It is not necessary, that a person should possess the highest qualities of mind, in order to make a will, nor that he should have the same strength of mind, which he may formerly have had ; the mind may be in some degree debilitated, the memory may be enfeebled, the understanding may be weak, the character may be eccentric, and he may even want capacity to transact many of the ordinary business affairs of life ; but it is sufficient, if he understand the nature of the business, in which he is engaged, has a recollection of the property, which he means to

*Cause submitted before Judge S. took his seat upon the bench.

dispose of, the objects of his bounty, and the manner, in which he wishes to distribute it among them. (p. 256.)

3. Where legal capacity is shown, and the testator acts freely, the validity of the will cannot be impeached, however unreasonable, imprudent or unaccountable, it may seem to the jury or to others. (p. 255.)

4. In order to make a valid will, it is not necessary, that the testator should name all his children in it, or give all of them a portion of his estate. If he was mentally capable of understanding the disposition, which he was making of his property, and acted freely, it is immaterial to whom he gives his property, whether all to one of his children, or to strangers. If he has a disposing mind and memory, he has the right to do, as he pleases with his property. (p 257.)

5. Although the testator was influenced by feelings of resentment and dislike towards a part of his children and by feelings of affection and attachment towards others, and though these feelings influenced him to give his whole estate to the one part, and nothing to the others, this is not sufficient to make the will invalid. (p. 257.)

6. Although the testator was fickle and inconstant, and at one time favored one or more of his children, and at other times disliked them and favored others, still if he acted freely and had the capacity to understand the nature of the business, in which he was engaged, and a recollection of the property, which he meant to dispose of, the objects of his bounty and the manner in which he wished to divide it, the will is not invalid on that account; and if his will was caused by the extreme kindness and attention of the principal devisees, that will not constitute undue influence, which will invalidate the will. (p. 257.)

7. Where a number of instructions had been given to the jury on the subject of mental capacity to make a will, and one instruction directed to the acknowledgment of the signature stated, that if the jury believed the testator knew, that his name was signed to the will, and acknowledged it in the presence of two witnesses, it is immaterial, whether the signature was written by the witness, the testator or both, it does not make the instruction vicious, because it says :    "The material matter for the jury to determine is, whether the testator knew his name was attached to the will, and that he recognized it as his will and signature in the presence of the attesting witnesses at the time of the acknowledgment." It was the "material matter" for the jury to determine, on the question raised by the instruction. (p. 258.)

8. The court should not give as an instruction a paragraph from a book containing matters hard to be understood and calculated to confuse and mislead. (p. 259–260.)

9. At common law a man could not dispose of his property by will. The statutes of wills changing the common law and permitting persons to dispose of their property by will but requiring that the testator should be of sound mind, as to testamentary capacity changed the common law presumption of sanity, and cast the burden of proof upon the propounder of the will to show, that the testator was sane, when the will was executed. (p. 261.)

10. Where an erroneous instruction has been given to the jury, the presumption is, that the exceptor was prejudiced thereby, and the judgment will be reversed for this cause unless it clearly appears from the record of the case, that the exceptor could not have been prejudiced by the giving of such erroneous instruction. (p. 261.)

11. Where upon the trial of an *issue devisavit vel non* the principal question was, whether the testator had mental capacity to execute the will, and the evidence was conflicting, and the court erroneously instructed the jury, that the presumption of law was that the testator was of sound mind, when the will was executed, and the burden of proof was on the contestants to show want of capacity, the Appellate Court cannot say, that the contestants, who excepted to said instruction, and against whom the verdict was rendered, were not prejudiced by such instruction. (p. 265.)

Appeal from and *supersedeas* to a judgment of the circuit court of the county of Greenbrier, rendered on the 18th day of June, 1879, in a cause in said court then pending, wherein George W. Nicholas and others were plaintiffs, and Elizabeth Kershner and others were defendants, allowed upon the petition of the plaintiffs.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment appealed from.

The facts fully appear in the opinion of the Court.

*James W. Davis* for appellants cited the following authorities: Bump. Fraud. Con. 77; 4 Gratt. 106; 9 Gratt. 334; 11 Gratt. 220; 11 W. Va. 584; 2 Russ. & M. (6 Cond. E. Chy. Rep.) 357; 6 Serg. & R. 55; 8 Dana 315; 1 Gratt. 83.

*A. C. Snyder* and *John W. Harris* for appellees cited the following authorities: 29 Gratt. 61; 3 W. Va. 29; 21 Gratt. 162; 6 Gratt. 57; 31 Gratt. 469; 14 W. Va. 157; 26 Gratt. 320; 29 Gratt. 61; 3 Wash. C. C. 580; 2 Southard 589; 34

Conn. 435; 1 Whart. & Still. Med. Jour. §§ 21, 22, 30; Red. Wills ch. 4 § 15; 11 W. Va. 584; 65 Pa. St. 368; 20 Gratt. 147; 30 Gratt. 56; 4 Wash. C. C. 262; 18 Gratt. 785; 12 Gratt. 153; 26 Barb. 653; 1 Wms. Ex'rs. 37; 4 W. Va. 742; 11 Gratt. 239; 29 Gratt. 24; 3 Serg. & R. 267; 26 N. J. Eg. 523; 66 Mc. 297; 3 Keyes 663; 26 Wend. 340; Redf. Am. Cas. Wills 410, 417, 418; 14 W. Va. 729; 6 Gratt. 57; 30 Gratt. 56; 1 Gratt. 18; 1 Rob. 350; 15 W. Va. 804; Pow. App. Pr. p. 131 § 24.

Johnson, President, announced the opinion of the Court:

This was an *issue devisavit vel non* tried in the circuit court of Greenbrier county to test the validity of the will of Henry Nicholas, deceased. The jury was empaneled on the 28th day of May, 1879, and on the 3d day of June rendered their verdict: "That the paper writing admitted to probate by an order of the clerk of the county court of Greenbrier on the 24th day of November, 1877, in the pleadings mentioned, purporting to be the will of Henry Nicholas, deceased, is the last will and testament of the said Henry Nicholas." A motion was made for a new trial, which was overruled, and the court dismissed the plaintiff's bill.

The bill shows, that the ground insisted upon for setting aside the will was, the incompetency of the testator on account of mental incapacity to make a will by reason of extreme age, he being at the time, when the will was executed, almost *ninety-five* years old, and also because of his long continued and excessive use of intoxicating liquor, and because of undue influence exerted upon him by some of the devisees and legatees under the will.

A bill of exceptions certifying all the evidence and the instructions given is made a part of the record. The motion for a new trial, as appears by the bill of exceptions, was based upon the following grounds: *First,* that the verdict is contrary to the law and the evidence; *Second,* that the court misdirected the jury; *Third,* that the court refused to instruct the jury as asked by contestants; *Fourth,* that the court refused, to permit contestants to open and conclude the evidence and the arguments; *Fifth,* that the court rejected competent evidence offered by contestants; *Sixth,*

that that the court repeated the instructions to the jury at the instance of proponents.

Did the court erroneously instruct the jury at the instance of proponents? . Seven of the instructions given at the instance of proponents are substantially the same as the law, laid down in the second, third, fifth, seventh, eighth and ninth points of the syllabus in *Jarrett* v. *Jarrett*, 11 W. Va. 584, and propounded the law correctly. They are as follows :

"The evidence of witnesses, who were present at the execution of the will is entitled to peculiar weight; and. especially is this the case with attesting witnesses.

" The evidence of physicians, especially those who attended the testator and were with him considerably during the time it is alleged he was of unsound mind, is entitled to great weight.

"It requires less capacity to make a will than it does to make a deed.

" Old age is not of itself sufficient evidence of incapacity to make a will.

" The time to be looked to by the jury in determining the competency of the testator to make a will is the time, when the will was executed."

It is objected, that this instruction, ought also to have included, the fourth point in the syllabus in *Jarrett* v. *Jarrett supra*, and ought to have informed the jury, that in considering the capacity of the testator at the time, when the will was executed, the condition of testator's mind both before and after that time might be regarded by them. The proposition of law was in itself not only correct but complete. If the contestants wished the other proposition given to the jury, they should have requested it. Where legal capacity is shown, the validity of the will cannot be impeached, however unreasonable, imprudent or unaccountable it may seem to the jury or others. This instruction is in part taken from the 11th point in the syllabus of *Jarrett* v. *Jarrett*, but omits that portion which says: "and no fraud or undue influence is shown to have been used," &c. The instructions must be taken as a whole, and two other instructions given for proponents, did make the qualification "if the testator acted

freely." The contestants were not prejudiced by the omission to insert the qualification.

For proponents, the court instructed the jury, that "in order for a man to make a valid will, it is not necessary, that he should possess the highest qualities of mind, nor that he should have the same strength of mind, that he may formerly have had; that the mind may be in some degree debilitated, the memory may be enfeebled; he may possess weakness of understanding, and even want of capacity to transact many of the ordinary business-affairs of life; but it is sufficient, if he possess mind enough to understand the nature of his property, to know the objects of his bounty, and to comprehend the disposition of his property in its simplest forms." This instruction is correct. *Greer* v. *Greers*, 9 Gratt. 330 and cases cited; *St. Leger's Appeal*, 34 Conn. 435; *Harrison* v. *Rowan*, 3 Wash. C. C. 580.

The court further instructed the jury for proponents, "that the mere opinions of witnesses, not experts, are entitled to little or no regard, unless they are founded on facts, which warrant them. If the facts upon which the opinions are founded are frivolous, the opinions are worth little or nothing." This is taken from the syllabus in *Jarrett* v. *Jarett supra* and is correct. And further, "statements or declarations made by devisees or legatees under the will as to the incompetency of the testator to make a valid will are entitled to little or no weight, unless it is proven, that such devisees or legatees had prior to the time of making such statements and declarations opportunities of knowing the mental condition of the testator ; and the weight to be given to such declarations or statements will depend entirely upon the facts and opportunities the devisee or legatee are shown to have possessed at the time, they were made." Whether the devisees and legatees, under a will, or the heirs at law of the testator are competent witnesses to speak of the competency of the testator to make the will, we are not called upon to decide in this case, as no objection to their competency was made in the court below, nor is any here made upon the subject of their competency. See *Anderson* v. *Cranmer*, 11 W. Va. 562, *McMechen* v. *McMechen* 17 W. Va. 683. If they

were competent witnesses, the contestants were not prejudiced by the instructions.

The court further instructed the jury, that "in order to make a valid will, it is not necessary, that the testator should name all his children in it or give all of them a portion of his estate. If the jury believe he was mentally capable of understanding the disposition he was making of his property, and that he acted freely, then it is immaterial to whom he gives his property, whether all to one of his children, or to strangers. If he has a disposing mind, he has the right to do as he pleases with his property." This is but saying, that if the testator had sufficient capacity to make a will and was not induced to make it by fraud or undue influence, he has a right to dispose of it, to whom he pleases. This is undoubtedly the law.

The court further instructed that "although the jury may believe, that the testator was influenced by feelings of resentment and dislike towards a part of his children and by feelings of affection and attachment towards others, and that these influenced him to give his whole estate to the one part and nothing to the others, still this is not of itself sufficient to make the will invalid." Certainly every fact set forth in the foregoing instruction might exist, and yet the will be valid. A competent and free testator has the undoubted right to dispose of his property in any manner and to whomsoever he pleases.

The court further instructed the jury for proponents, that "although the jury may believe, that the testator was fickle and inconstant, and that at one time he favored one or more of his children, and at other times disliked those and favored others; still if they believe he acted freely and had the capacity to understand, what property he had, and to whom he was giving it, the will is not invalid on that account; and if they believe his will was caused by the extreme kindness and attention of the devisees, that will not constitute undue influence, which will invalidate the will." This instruction is correct. It amounts to saying, that a free and competent testator may give his property to whom he pleases, and the kindness and attention of those, who are the recipients of his bounty, however extreme that

kindness and attention may have been, cannot be regarded as "undue influence" exerted upon the testator. It would show a greater reason for making such a will. It is natural, that a father, should prefer a kind and attentive child to one who was unkind, thankless and ungrateful. *Forney* v. *Ferrell*, 4 W. Va. 742; *Parraman* v. *Foyle*, 11 Gratt. 239; *Simmerman* v. *Songer*, 29 Gratt. 24; *Remsen* v. *Brinckerhoff*, 26 Wend. 340.

The court further instructed the jury, "that if they were satisfied from the evidence, that the testator, Henry Nicholas, knew his name was signed to the will, and that he acknowledged it in the presence of the two attesting witnesses both in his presence at the time, then it is immaterial how the signature of the testator was placed upon said will, whether by one of the witnesses, by the testator or by both the witness and testator. The material matter for the jury to determine is, whether the said Henry Nicholas knew, whether his name was attached to the will, and that he recognized it as his will and signature in the presence of the attesting witnesses, both in his presence at the time of such acknowledgment."

The objection urged to this instruction is, that it informed the jury, that "the material matter for the jury to determine is, whether the said Henry Nicholas knew his name was attached to the will, and that he recognized as his signature in the presence of the attesting witnesses both in his presence at the time of such acknowledgment;" that "it took away the question of insanity wholly from the jury." This last declaration of counsel is certainly not correct. The court had given repeated instructions to the jury on the question of the mental capacity of the testator, and the same mental capacity is involved in this instruction, and the instruction was particularly directed to the question, whether the testator knew his name was attached to the will, and whether so knowing he acknowledged it in the presence of the attesting witnesses as his signature, no matter how placed there, and that on this *question* "the material matter for the jury to determine was, whether the said Henry Nicholas knew, that his name was attached to the will, and that he recognized it as his will and signature in the presence of the attesting wit-

nesses, both present at the time of such acknowledgment."
The instruction stated the law correctly, and was not calculated to mislead the jury. *McMechen* v. *McMechen*, 17 W.
Va. 683; *Webb* v. *Dye*, 18 W. Va.; *Jesse* v. *Parker*, 6 Gratt.
57; *Cheatham* v. *Hatcher*, 30 Gratt. 56.

It is also assigned as error, that the court refused to permit the contestants to open and conclude the evidence and
arguments to the jury upon the issue. Upon an issue,
*devisavit vel non*, the proponents of the will have the right to
open and conclude both the evidence and arguments to the
jury. *Coalter* v. *Bryan*, 1 Gratt. 18; *McMechen* v. *McMechen*,
*supra.*

It is also assigned as error, that the court refused, after the
proponents closed their testimony to permit contestants to
introduce further testimony. If this under any circumstance
would be proper, it does not appear, that the contestants
were injured by the refusal, as it is not shown by the record,
that, at the time of such objection made by the court any
witness was offered for examination.

It is also assigned as error, that the court refused to hear
evidence, that the testator before the execution of the will
had given a tract of land to his daughter, Francina. The
question to the witness was: "Do you know, whether your
father gave to Francina Livesay, his daughter, a tract of land
in Nicholas county?" The question was objected to and
objection sustained. The answer to the question would have
been improper under the circumstances, as the deed of gift
would be the best evidence.

Counsel for contestants insists, that the court erred in refusing to give the following instruction: "Moral insanity is
now as well understood by medico-jurists and almost as well
established by judicial recognition, as the intellectual form.
Mentally man is a dualism, consisting of an intellectual and
moral nature. It is this peculiar nature, that exalts him
above the animal, and makes him legally and morally a responsible being. The animal has neither reason to guide,
nor a moral will to control its passions; passion governs, and
instinct alone guides its conduct. It is therefore not responsible to the criminal law. But a proper man in a sound and
normal state, with a *mens sana in corpore sano* has peculiarly

and pre-eminently the light of reason to guide him in his pathway of duty, and also has a free and rational presiding will to enable him, if he so chose, to keep that way in defiance of all passion and temptation." Of course it was not error to refuse such an instruction. The court might as well have been asked to read as an instruction to the jury the most abstruse paragraph from any work on metaphysics. The court certainly gave the counsel all he could ask, when it permitted him to read the paragraph from the books to the jury as the opinion of an eminent jurist, for what it was worth; and counsel did read it to the jury, and comment on it, but the court told the jury that "no difference whether it was called mental or moral insanity, if it deprived the testator of his free will, or put him in a condition of not being of sound mind and disposing memory, it would render him powerless and incapable to make a will." The contestants certainly were not prejudiced by the action of the court in the premises.

It is also assigned as error, that at the request of proponents the court repeated the instructions to the jury asked by them. It does not appear why this was done. It may have been, because the jury after being out for some time came into court and asked further instructions; and after an additional instruction had been given, the court at the instance of proponents repeated the instructions which had been given, before the arguments commenced. No objection was then made to it; and none was made, until after the jury returned their verdict, when the counsel for contestants based their motion for a new trial in part upon the fact, that the instructions had been repeated at the instance of proponents. This was certainly no reason to set aside the verdict. It is not perceived, how the contestants could have been injured by the repetition, provided the instructions propounded the law correctly. It was in the discretion of the court to repeat them or not. The counsel for contestants could have had theirs repeated, if they so desired. It appears, that without request, one of them was repeated, and that by inadvertence the other was omitted.

The following instruction given at the instance of proponents was excepted to by the counsel for contestants: "The

presumption of law is always in favor of sanity at the time the will was executed, and the burden of proof lies on the party, who asserts the incapacity of the testator to make a will." The counsel for contestants admits, that the presumption of law is, that the testator was competent to make a will, and the burden of proof is on the contestants to show, that incapacity existed, but objects to the instruction, because the word "always" is used. "Always" as here used does not mean, that after proof is shown, that the testator was insane, the presumption is not rebutted; but it simply means, that "always" in every case, the presumption is in favor of sanity, and unless it is rebutted, it must be held, that the testator was sane. This instruction was taken from the sixth point of the syllabus in *Jarrett* v. *Jarrett, supra,* and as applied to the execution of a deed, as in that case, it is correct; but notwithstanding the counsel for contestants admits, that as to the execution of a will the presumption of law is, that at the time, when it was executed, the testator was of sound mind, and the burden of proof is on him, who alleges incapacity, that is not the law. The law on this subject, as laid down in *McMechen* v. *McMechen, supra,* and sustained by both the English and American authorities is: " At common law a man could not make a will; and the statutes of wills changing the common law, and permitting persons to dispose of their property by will, but requiring, that the testator should be of sound mind, as to testamentary capacity changed the common law presumption of sanity, and cast the burden of proof upon the propender of the will to show, that the testator was sane, when the will was executed." The court clearly erred in giving the instruction. But we must enquire further; could this erroneous instruction have prejudiced the contestants? The rule is, where an erroneous instruction has been given to the jury, the presumption is, that the exceptor was prejudiced thereby; and the judgment will be reversed for this cause, unless it clearly appears from the record of the case, that the exceptor could not have been prejudiced by the giving of such erroneous instruction; in which case the judgment will not be reversed for such cause. *Mason* v. *Harper's Ferry Bridge Co., supra.*

In *Wiley et als.* v. *Givens,* 6 Gratt. 277, the court held, that

an erroneous instruction having been given by the court be-
low the appellate court could look no farther than to the
propriety of the instruction given; and if that was erroneous,
the judgment would be reversed, and a new trial granted.
That decision was followed in *Rea's adm'x.* v. *Trotter*, 26
Gratt. 585; but in *Danville Bank* v. *Waddill*, 27 Gratt. 451,
Staples, J., said for the court, Judge Christian dissenting:
"Whatever may be said of the ruling in these two cases, it
will not be disputed, that whenever an erroneous instruction
is given, or, what is the same thing, a correct one refused,
the judgment will be reversed, unless the appellate court
can see from the whole record, that even under correct in-
structions a different verdict could not have been rightly
found, or unless it is able to perceive, that the erroneous
ruling of the trying court could not have influenced the jury.
The learned counsel maintains, that such was the case here,
as is proved by a general verdict for the defendant; that such
a verdict is responsive to both issues; that the jury would
have found a verdict for the defendant, even if the court had
given the instruction; for they have found for the defendant
upon the plea of *non assumpsit*, as well as upon the plea of
the statute of limitations; and so with or without the instruc-
tion the result would have been the same. The defect in
this argument is in assuming, that a general verdict is nec-
essarily a finding, upon all the issues in favor of the party,
for whom it is rendered. It is certainly more regular in
practice, and in some cases it is essential, that the finding
shall respond to all the issues. The cases of *Hites' heirs* v.
*Wilson*, 2 H. & M. 268 and *Brown's ex'or* v. *Henderson*, 4 Munf.
492, furnish illustrations of this rule. In the latter case issues
were joined on 'pleas of payment and fully administered.' The
jury found for the defendant, 'he having fully administered'
&c. A judgment on this verdict was reversed by this
Court, on the ground that the issue on the plea of payment
had not been tried."

In the case above referred to the pleas were *non assumpsit*
and the statute of limitations; and the verdict was in general
terms "for the defendant." Judge Staples further says, p.
452: "The jury had been told in effect, that the claim of the
plaintiff was barred by limitation. Why should they give

themselves the trouble to consider it upon its merits? One of the issues was of easy solution under the instruction of the court; the other depended upon difficult questions of evidence, conflicting testimony requiring careful examination. Is it not more reasonable to suppose, that the verdict was based upon the law as expounded by the court, rather than the troublesome controverted question of fact? We can not assert, that this was done: We cannot assert that it was not done. In this state of uncertainty a reversal is the inevitable result of the misdirection. Where the chances are equal, that the verdict resulted from the error of the judge, a new trial will be granted."

We have examined the cases of *Kincheloe* v. *Tracewell*, 11 Gratt. 587; *Colvin* v. *Menefee, Id.* 87, *Binns* v. *Waddill*, 32 Gratt. 588, *Beaty* v. *B. & O. R. R. Co.*, 6 W. Va. 388 and *Clay* v. *Robinson*, 7 W. Va. 348; and while in every one of these cases it appeared that there had been a misdirection to the jury, yet in every one the judgment of the court below was affirmed, on the ground that the misdirection could have done no injury to the exceptor. But in none of those cases did it appear as in this case, that the misdirection went to the whole evidence in the cause, and instructed the jury as to the weight of the evidence or the effect thereof. The Virginia authorities on the subject of instructing the jury upon the weight, effect and sufficiency of evidence evince a jealous care to watch over and protect the legitimate powers of the jury. They show, that the court must be very careful not to overstep the line, which separates law from fact. They establish the doctrine, that where parol evidence is submitted to a jury, any opinion as to its *weight, effect* or *sufficiency*, any assumption of a fact *proved*, or even an intimation, that written evidence states matters, which it does not state, will be an invasion of the province of the jury. 1 Rob. Prac. 338–344; *Ross* v. *Gill and wife*, 1 Wash. 88; *Keel & Roberts* v. *Herbert, Id.* 203; *Gregory* v. *Baugh*, 2 Leigh 665; *McDowell ex'rs* v. *Crawford*, 11 Gratt. 405; *State* v. *Hurst*, 11 W. Va. 75; *State* v. *Betsall*, 11 W. Va. 740.

Now in this cause a bill was filed for the purpose of setting aside the will of Henry Nicholas, deceased. It alleged, that the testator at the time the paper-writing purporting to be his

last will and testament was made, was ninety-five years old, that the powers of his mind were so relaxed; that he was incapable of making a will; that his age had rendered him so childish, as to make him the prey of any designing person on whom he depended. The answer does not deny his age but avers, that at the time he made the will, his mind was clear, his judgment good, and his understanding unimpaired; that his eyesight was somewhat defective, but aside from this both his physical and mental condition were unusually vigorous for a man of his advanced age; that he had always been a safe and cautious business-man with a strong will and great reliance upon his own judgment, that at the time he made said will, all his faculties were in good condition, and he was capable of fully comprehending the disposition which he was making of his property.

Many depositions were taken on both sides of the issue, which the statute required should be directed; and almost all the evidence was directed to the question as to his mental capacity to make the will at the time it was executed. The evidence of the proponents, including the attesting witnesses tended to show, that he was in the full possession of his faculties and fully capable of making a testamentary disposition of his property. On the other hand the evidence of the witnesses for the contestants, both the heirs at law and some of the devisees and legatees as well as other persons, was to the effect, that he was childish, in his dotage, utterly unable to recognize his friends or even his own children. It is true, that the greater part of this evidence relates to a time about two years prior to the execution of the will; but one of the witnesses speaks of a time about three months before, and another of a time near the execution of the will, within a few days thereof. Under these circumstances had the jury found either way, governed by well settled rules, we could not disturb the verdict. It must be conceded, that the instruction was clearly erroneous. It instructed the jury, that the presumption of law was, that the testator was of sound mind, when the will was executed, and that the burden of proof was on the contestants, to show incapacity in the testator. The reverse is the law. That was saying to the jury: If you hesitate on the question of the capacity of

the old man to make the will, the presumption of law is on the side of his capacity; and upon a doubt arising in your minds as to his capacity, this presumption would be sufficient to solve it in favor of the will. Whereas if the instruction had propounded the law correctly, the doubt would have been solved against the validity of the will. While to our minds the evidence might clearly preponderate one way or the other, yet, where there is a conflict of evidence, we have no right to set aside a verdict, because, if we had been on the jury, we would have rendered a different one. We think the instruction was an unwarrantable interference with the province of the jury, and that the contestants may have been prejudiced by it. The decree of the circuit court of Greenbrier county is reversed with costs; and the verdict of the jury set aside and a new trial of the issue awarded.

JUDGES HAYMOND AND GREEN CONCURRED IN THE OPINION AND SYLLABUS.

DECREE REVERSED. NEW TRIAL AWARDED.