## CHARLES D. GILMORE

### *v.*

## MATILDA SAPP *et al.*

*Filed at Springfield September 30, 1881.*

1. PUBLICATION—*sufficiency of, in chancery, to non-resident.* Where the publisher's certificate of publication of a notice to non-resident defendants in chancery states that the paper was weekly in its publication, and that the notice was published four weeks successively, beginning on December 17, 1875, and ending on the 7th of January, 1876, it appearing that the first and last insertions were each on a Friday, it will be sufficient to show that each insertion was in a separate week, and will satisfy the statute.

2. MULTIFARIOUSNESS—*in bill no ground of reversal on default.* The practice is well settled that multifariousness in a bill can not be urged as a ground of reversal of a decree rendered on a default.

3. The objection that a bill is multifarious may be waived, and is so considered, unless taken in apt time and in an appropriate manner, although courts, to avoid embarrassment in the trial of a case, may, *suo sponte*, enforce the objection.

4. PATENT—*when title passes by.* Where a patent is filled, countersigned, sealed, and recorded in the general land office, the title to the land vests in the person named as the grantee in the patent, without a formal delivery of the instrument, and when so vested it can not be taken away by any mere ministerial officer of the government.

5. Any effort by a ministerial officer to cancel a patent which transfers title to a grantee, and reinvest the title in the government, is absolutely void, and can not affect the rights of any one, and legislative authority is incompetent to confer such power upon a land officer.

6. CONSTITUTIONAL RIGHTS—*as to security in property.* It is a fundamental principle that before a person can be deprived of a right, even by judicial sentence, he must have notice and reasonable opportunity to be heard in defence of his rights.

7. SUPREME COURT OF THE UNITED STATES—*decision when binding on State courts.* A decision of the Supreme Court as to the effect of a patent, being in relation to an act of Congress, is authoritative and binding on all other tribunals.

8. CLOUD ON TITLE—*sufficiency of bill to remove.* A bill which shows the establishment of a preëmption right to land by one under whom the complainant claims, the issue of a certificate of purchase, and finally a patent, which was duly recorded in the general land office, and that afterwards the commissioner of the land office, without authority or notice, and without

the knowledge of the patentee, set aside and cancelled the certificate of purchase and patent, and issued a patent to another, the original patentee being in possession all the time, is sufficient, on default, to authorize a decree setting aside the last patent as a cloud upon the title of the complainant.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. OLIVER L. DAVIS, Judge, presiding.

Mr. N. M. BROADWELL, and Mr. C. M. SWALLOW, for the plaintiff in error:

The record fails to show a sufficient publication of the notice of the pendency of the suit. The statute requires that it "shall be published at least once in each week, for four successive weeks." Chancery Code, ch. 22, sec. 12.

This mode of service being in derogation of the common law, the statute must be strictly pursued, and no presumptions indulged. *Lickins* v. *McCormick*, 39 Wis. 313; *Bradley* v. *Jamison*, 46 Ia. 68; *Fountain* v. *Houston*, 58 Ind. 316.

It is not the mere date of the issue, but the time of publication, that the statute regards. The notice is required to be published, or made public, by putting the paper into circulation. Publication is something more than the mere printing of the paper. *Hinchman* v. *Barns*, 21 Mich. 556; *Price* v. *Butlers*, 21 Kan. 124.

The bill is fatally deficient in showing any ground for relief against the cancellation of the Swisher entry. The allegation is: "The commissioner of the general land office, without authority or notice to and without the knowledge of the said Henry Swisher, set aside and cancelled the said purchase, and caused the said certificate of purchase and the record of said patent to be cancelled." The presumption being in favor of the regularity of the official acts of a public officer, a general charge such as this, without appropriate specifications, can not be regarded.

The finding of land officers upon the facts in matters of preëmption has been held conclusive by the courts, upon the

familiar ground that such officers, in their findings, were acting in a *quasi* judicial capacity.   *Robbins* v. *Bunn,* 54 Ill. 51 ; *Gray* v. *McCance,* 14 id. 343 ; *Shipley* v. *Cowan,* 1 Otto, 330 ; *Marquez* v. *Frisbie,* 11 id. 473.

The bill is multifarious.   Three distinct and separate tracts of land are involved in the suit, and the claimants of each tract have and claim no interest in either of the other tracts. Different complainants can not join when the cause of action is not joint.   *Yeton* v. *Lennox,* 8 Pet. 123 ; *Armstrong* v. *County,* 10 Ohio, 235 ; Story's Eq. Pl. sec. 279.

Mr. E. S. TERRY, for the defendants in error:

There can not be any substantial difference between the words "shall be published at least once a week ·for four successive weeks," and "published for four successive weeks, beginning with the issue dated December 17, 1875, and ending with the issue dated on the 7th day of January, 1876."

It is objected that it does not appear, from the finding of the record, whether the paper was a weekly, semi-weekly or monthly paper, nor that it was issued in the interval between the days mentioned.   The certificate of the printer shows the paper in which the notice was printed to be a weekly paper.

It was held in *Underhill* v. *Corwin,* 15 Ill. 556, that the certificate of the printer certifying that a notice "was inserted in said paper commencing with August 21, 1852, and ending October 2, 1852—six weeks,"—would be taken to show that publication had been made for four successive weeks within these periods.

This court has also held, that where a statute required a notice for three weeks successively, and the publication was in a weekly paper, on the 16th, 23d and 30th, the publication was sufficient.   *Madden* v. *Cooper,* 47 Ill. 359.

So, a notice published for four successive weeks, the first publication being on the 20th of March, so that sixty days intervened between the first insertion and the date of the judgment, was held good.   *Pierce* v. *Culton,* 12 Ill. 364.

It is complained that the publication in this case was made for twenty-one days only—just three weeks. The statute requires only that the notice should be published once a week for four consecutive weeks, and the notice in this case is sufficient, though four full weeks have not elapsed between the first and last publications. *Andrews* v. *The People,* 84 Ill. 28; *St. Joseph Manufacturing Co.* v. *Daggett,* id. 556.

Also, it is objected that different plaintiffs can not unite their claims where the cause of action is not joint.

It is a rule that if the grounds of the several actions joined arise out of one and the same transaction or series of transactions, all tending to the same end, and if one connected story can be told of the whole, the objection made can not apply. Story's Eq. Pl. sec. 271. See, also, Story's Eq. Pl. secs. 533, 535; *Howard* v. *St. Clair Dr. Co.* 51 Ill. 130; *Mt. Carbon C. and R. R. Co.* v. *Blanchard,* 54 id. 240.

As to effect of cancellation of patent or entry, see *Robbins* v. *Bunn,* 54 Ill. 52; *Baty* v. *Sale,* 43 id. 351.

When land is purchased and paid for, it is no longer the property of the United States, but of the purchaser. He holds for it a final certificate, which can not be cancelled by the United States, if there be no fraud or mistake. *Carroll* v. *Stafford,* 3 How. 441, and recognized by this court in *Rogers* v. *Brent,* 5 Gilm. 578.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Complainants claim to derive title to the land in controversy under an entry made at the land office located at Danville, in this State, under the preëmption laws then in force. The proof of preëmption was filed, the entry was made, and the money paid on the 6th day of October, 1834. The certificate of entry was issued to Henry Swisher. Afterwards a patent was issued to him for the land, but was never delivered. Swisher subsequently sold and conveyed the land to

different persons, from whom complainants claim to hold title by conveyance or descent, either directly or indirectly.

The bill alleges that on the 15th day of July, 1837, the commissioner of the general land office, without authority or notice to and without the knowledge of Swisher, set aside and cancelled the purchase, and caused the certificate of purchase and patent to be set aside. The land has been in the occupancy of Swisher, and those claiming under him, since before his entry of the same. Plaintiff in error located land warrants on this land, and made an entry of the same on the 12th day of January, 1875, and procured from the commissioner of the general land office patents for the land. The bill was filed to set aside and cancel the patents issued to plaintiff in error, and to quiet defendants in error in their several titles. The bill was taken as confessed, and the relief granted, and defendant prosecutes error to reverse that decree.

Three questions arise on this record: First, was the notice of publication sufficient to sustain the decree; second, is the bill so far multifarious as to preclude the relief sought; and, third, whether the allegations of the bill, as confessed by the default, warrant the decree rendered.

On turning to the record we find the certificate of the publisher conforms in every respect to the requirements of the statute. It states that the paper was weekly in its publication; that the notice was published four weeks successively, beginning on the 17th of December, 1875, and ending on the 7th of January, 1876. The first publication was on a Friday, and so was the last, and we must presume the intermediate publications were on the same day of the week. On turning to a calendar it will be found that if each publication was on a Friday, then each was made in a separate week, and being four publications there was one in each of four weeks, and the statute is satisfied.

It is, however, said, the service by publication is not according to the common law, and should be strictly according to

the requirements of the statute. By various ancient statutes service was had by proclamation, in different proceedings. Hence, since as early as the time of Richard II, such service was resorted to in a number of different proceedings. But even if strictness is required, this certificate fulfills the most rigid requirement of the statute. Nor is there the slightest force in the suggestion that it fails to appear the papers were not circulated and made public. The certificate states the notice was published four weeks. If published, it unquestionably was made public. It also states the papers were issued, and if so, they must have been put in circulation, and the notice must have become public. To give so strict a construction would violate all canons of construction, and tend to stifle justice. It would be extremely technical, subserve no beneficial end, and be virtually to repeal the statute by defeating its obvious purpose.

The objection that the bill is multifarious, can only be raised by demurrer, according to strict practice. But some courts have held that it may also be raised by answer. The practice is well settled that multifariousness can not be urged as a ground of reversal on appeal or error to a decree on a bill taken *pro confesso.* See *Luckett* v. *White,* 10 Gill & Johns. 480; *Abraham* v. *Plestoro,* 3 Wend. 538; *Grove* v. *Fresh,* 9 Gill & Johns. 280; *Thurman* v. *Shelton,* 10 Yerg. 383; *Buffalow* v. *Buffalow,* 2 Ir. Ch. 113. We have found no case that announces a different rule of practice, and the rule accords with reason. The objection that a bill is multifarious may be waived, and is so considered unless taken in apt time and in an appropriate manner, although courts, to avoid embarrassment in the trial of a case, may, *suo sponte,* enforce the objection.

It is urged, with apparent earnestness, that the bill is wholly wanting in setting up sufficient ground for granting relief. The bill sets out and alleges that the various requirements of the preëmption acts of Congress had been complied

with by Swisher to entitle him to enter the land; that he filed his proofs and paid the price fixed by the government on the land, and received a certificate of purchase for the land, and that a patent therefor was made out, signed, sealed, and recorded in the general land office. This vested the legal title in Swisher. The Supreme Court of the United States has held that when a patent is filled out, countersigned, sealed, and recorded in the general land office, the title to the land vests in the person named in the patent, without a formal delivery of the instrument; and as this decision relates to a construction of an act of Congress, it is authoritative and binding on all other tribunals. See *United States ex rel.* v. *Shenz,* 102 U. S. 379.

If, then, as held by that court, the fee simple title vested in Swisher when the patent was recorded, we are aware of no means by which he could be involuntarily deprived of his title, except by a judicial proceeding. That is the only means known to the law. The legislative power of the government is not competent to transfer title from one person to another, nor to the government. That is beyond its power. That branch of government can only declare what acts of the owner may authorize the courts to declare that the title shall be transferred. Hence, it follows that legislative authority is incompetent, if it would, to confer such power upon a mere ministerial officer, and any effort by such an officer to cancel a patent which transfers title to a grantee, and reinvest the title in the government, is absolutely void, and can affect the rights of no one. Such an officer, under the division of the powers of our government, possesses no such authority, and can be invested with no such functions. The act, then, of the commissioner of the general land office, in setting aside and annulling the entry and patent, was void, and did not produce the slightest effect on the title of Swisher.

Again, even if the commissioner had the power, he could not exercise it until Swisher had actual or constructive

notice of the proceeding, or entered his appearance, and the bill charges and the default confesses there was no such notice. It is a fundamental principle that before a person can be deprived of a right by judicial sentence, he must have notice and reasonable opportunity to be heard in defence of his rights. This is so elementary that it must be known to all persons in the profession, if not to all others.

We perceive no error in this record, and the decree of the court below is affirmed.

*Decree affirmed.*