CORDELIA HOLLENBECK

*v.*

FRANCIS M. COOK *et al.*

*Opinion filed June 17, 1899.*

1. WILLS—*verdict of jury in will contest not lightly disturbed.* A verdict in a will contest, adverse to the contestant, will not be disturbed on appeal, where there is a clear conflict in the evidence, and the facts and circumstances, by fair and reasonable intendment, will authorize the verdict returned notwithstanding it may appear to be against the weight of the evidence.

2. SAME—*referring to instrument in instructions as the "will" is not reversible error.* That the proponent's instructions in a will contest refer to the instrument as the will of the deceased instead of the "alleged" will is not ground for reversal.

3. SAME—*wisdom or justice of will is not a question for the jury.* That there has been an unequal division of the testator's property or that some of the testator's relatives have been cut off is a mere circumstance which the jury may consider with the other evidence in passing upon the question of the testator's sanity.

4. SAME—*burden of proof in will contest.* Where a will is contested for mental incapacity the proponents have the burden, in the first instance, of proving the testator's sanity, but having made a *prima facie* case the contestants are required to establish their claim of insanity by a preponderance of the evidence.

5. PARTITION—*bill to contest will and bill for partition should not be combined.* The matter of partitioning lands is not a proper matter to be incorporated in a bill in chancery brought under section 7 of the act on wills, to contest validity of a will for mental incapacity.

6. APPEALS AND ERRORS—*when objection that court erred in not retaining bill for purpose of partition cannot be urged.* An objection that the court, in entering judgment on the verdict sustaining the will, erred in not retaining the bill for the purpose of partition, as therein prayed, cannot be urged on appeal, in the absence of anything to show that complainant, by motion or otherwise, requested the court to retain the bill.

APPEAL from the Circuit Court of Kankakee county; the Hon. ROBERT W. HILSCHER, Judge, presiding.

H. K. WHEELER, and W. R. HUNTER, for appellant.

T. P. BONFIELD, A. E. SMITH, and C. A. FINCH, for appellees.

180—5

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill in equity brought by Cordelia Hollenbeck, against Francis M. Cook and others, to set aside the will of her mother, Julia A. Cook, executed March 5, 1890, on the ground of unsoundness of mind of the testatrix and undue influence on the part of Francis M. Cook. No evidence was introduced on the trial to establish undue influence, but the complainant sought to impeach the will solely on the ground that the testatrix was of unsound mind, and hence incompetent to make a will.   At the January term, 1898, of the circuit court of Kankakee county a trial was had, and the jury returned a verdict sustaining the will.   The court granted a new trial, and a second trial was had at the October term, 1898, before a jury, resulting in a verdict sustaining the will.   The court entered judgment on the verdict, and complainant appealed.

The will was executed on the 5th day of March, 1890, and the testatrix died in March, 1897.   The will was admitted to probate on the 26th day of March, 1897, in the county court of Kankakee county.

On the trial in the circuit court, in regard to the testamentary capacity of the testatrix many witnesses were called and much evidence was introduced by the respective parties.   For the purpose of sustaining the will appellees introduced many witnesses who knew Julia A. Cook when the will was made, before that time and since, and they all testified that she was of sound mind and capable of transacting ordinary business.   William Potter, a lawyer of Kankakee, who drew the will, testified that he had known the deceased since 1880; that he resided across the street from her; that he had transacted business for her and her husband and that she was of sound mind.   In reply to a question propounded by the court he testified that in all of his intercourse with her he never saw anything indicating mental derangement.

Sarah Tolson testified that she lived in Kankakee and knew Mrs. Cook from 1889 until the time of her death. She further testified: "From 1889 to 1897 I saw her two or three times a week, possibly. From 1889 to 1891 I saw her every day. We lived next door neighbor. I did not speak to her every day but would see her daily. She was very economical and very frugal. She had good clothes but did not wear them. She wore plain clothes generally. I remember when she made her will. I did not have any conversation with her, but I remember the day she went up to make the will. In my judgment, at that time her mind was sound." She was asked whether she had had any experience with insane people, and answered: "I worked five years at the insane hospital here, as an attendant, and during that time I came in contact with a great many insane people. In my opinion Mrs. Cook was of sound mind in 1889 and 1890 and 1891. I saw her two or three weeks before her death. I saw her very often from 1891 to 1897, and after the death of her husband, in 1893, her mind did not seem so strong, and growing more feeble in body. She was very old-looking. She looked older than she really was, I think."

Elizabeth Tolson testified: "I live in Kankakee City. I was very well acquainted with Mrs. Julia Ann Cook. I lived next door for over two years—from 1888 to 1891. I saw her during that time very frequently and had frequent conversations with her nearly every day,—sometimes two or three times a day,—upon different subjects and topics. I saw her very frequently in the spring of 1890. I remember very well when she made her will. I did not have much conversation with her about the will, but I did on other subjects, and in my opinion she was of sound mind at that time. I saw her after, until her death. I did not notice much change in her mind, only she was getting weaker. She lived alone with her husband and had help very seldom. She was a hard worker. No children were living with her. In 1893 her mind had

not changed much. Of course, she got old and her mental faculties were about worn out, but she was around a good deal afterwards. I saw her after the death of her husband very often. She after that grew weaker."

Much other evidence of a similar character was introduced by the appellees. On the other hand, appellant introduced a number of witnesses who testified that the testatrix was not of sound mind. They also proved certain acts and conduct of the deceased which tended to show that the mind of the deceased was impaired. But it will serve no useful purpose to go over the evidence of the various witnesses in detail. ·

There was a direct and clear conflict in the evidence in regard to the sanity of the testatrix, and the rule which should control in a case of that character is clearly laid down in *Shevalier* v. *Seager*, 121 Ill. 564. That was a case like the one under consideration, where a bill was filed to impeach a will on the ground that the testator was of unsound mind when the will was executed. There, as here, the evidence was conflicting, and after a careful consideration of the case we held that a verdict will not be set aside when there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict returned, notwithstanding it may appear to be against the strength and weight of the evidence, nor when the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the finding. It was there also held, that where the evidence as to the mental capacity of a testator is hopelessly conflicting, many of the witnesses and acquaintances of the deceased testifying that he was not competent and an equal or greater number testifying that he was competent, and the trial court sanctions a verdict finding the testator incompetent by refusing a new trial, this court will not have the power to reverse on the ground that the verdict is not sustained by the evidence. Here, the mental capacity of the deceased has been passed up-

on by two juries, both finding that she was sound of mind when the will was executed, and while there is evidence tending to show that the testatrix was not of sound mind when the will was executed, under the rule established in the case cited that question must be regarded as settled by the verdict of the jury and judgment of the circuit court overruling the motion for a new trial.

It is, however, contended that the court erred in admitting in evidence the certificate of the oath of the witnesses at the first probate of the will. The certificate of the oath of the witnesses conforms substantially to the requirement of section 2 of the Statute of Wills, and under section 7 of the same statute it is competent evidence on a trial of this character.

It is also claimed that the court erred in the instructions to the jury. Several of appellees' instructions refer to the instrument in question as the will of the deceased, and it is claimed the instrument should be referred to as the "alleged" will. It may be conceded that the instructions ought not to assume that the instrument in question was the will of the deceased, yet the error, if it may be regarded as an error, was one that could not have misled a jury, and hence should not be regarded as sufficient ground to reverse a judgment.

Complaint is made of appellees' first and tenth instructions, for the reason that they, in substance, inform the jury that they have nothing to do with the question whether the will is just or unjust; that the testatrix had the right to dispose of her property as she desired, and such disposition is valid whether reasonable or unreasonable; that it was sufficient if the will was made according to law and if the testatrix was of sound mind and memory at the time of making the will. The instructions merely announce a well known rule of law which has been declared by this court in a number of cases. A testator has the undoubted right to dispose of his property as he may think best, and the fact that the property may

not be equally divided among the testator's relatives does not impair the validity of the will. The fact that there has been an unequal division, or some of the testator's relatives may have been entirely cut off, is a mere circumstance which the jury may consider in connection with other evidence in passing on the soundness of mind of the testator, and that is all. In the discussion of this question in *Carpenter* v. *Calvert*, 83 Ill. 62, it was said (p. 70): "The whole tenor of the trial and the spirit of the instructions seemed to invite the jury to examine and pass upon the question whether the will in controversy was a just, wise and proper disposition of the property of the testatrix. This is not a question to be determined by the jury. The owner of the property has the lawful right to dispose of the same as he or she may choose, and such disposition of the property is valid, whether it be reasonable or unreasonable, just or unjust." The rule thus declared has been followed in subsequent cases. *Schneider* v. *Manning*, 121 Ill. 376; *Nicewander* v. *Nicewander*, 151 id. 156.·

It is also claimed that the court erred in giving appellees' fifth instruction, which was as follows:

"The jury are instructed that where an instrument purporting to be a will is proved, including soundness of mind and memory on the part of the testatrix, by the testimony of the subscribing witnesses and other witnesses, and unsoundness of mind is alleged as a ground for setting the will aside, the fact of insanity or of unsoundness of mind must be established by a preponderance of the evidence. The evidence of insanity should preponderate or the will must be taken as valid. If the evidence is evenly balanced as to the sanity of the testator, the presumption in favor of sanity, if proved, as above stated, must turn the scale in favor of the sanity of the testator."

This instruction, in its material parts, is sustained by *Wilbur* v. *Wilbur*, 129 Ill. 392, where it was held, that in the contest of a will upon the question of testamentary ca-

pacity the law throws the burden of proving the sanity of the testator, in the first instance, on the party asserting the validity of the will; but after a *prima facie* case has been made out by the testimony of the subscribing witnesses the weight of the legal presumption in favor of sanity is in favor of the proponent, from which it necessarily results that upon the whole case the burden of proof rests upon the contestants. See, also, *Graybeal* v. *Gardner*, 146 Ill. 337, where the same doctrine is announced.

Upon overruling the motion for a new trial the court entered judgment on the verdict and entered a decree dismissing the bill. Upon an examination of the bill it appears that complainant alleged that there were certain lots owned by Julia Ann Cook, in her lifetime, which were not disposed of by the will, and that she owns an undivided one-third thereof, and that Francis M. Cook and Laura J. Bouk own two-thirds thereof, undivided. The bill prays for partition of such undivided property. The answer contains the following: "Defendant avers that the only property of real estate belonging to Julia Ann Cook not disposed of by her last will was lot 8 in block 59 and lot 6 in block 64, and admits that the complainants, Laura J. Bouk and Francis M. Cook, have each an undivided one-third interest in said property; admits that the complainants, Laura J. Bouk and Francis M. Cook, are heirs-at-law of Abram Cook, and are each the owner of an undivided one-third interest in lot 10 in block 59 and lot 5 in block 64." It is now claimed by appellant that the court erred in refusing to retain the bill after overruling a motion for a new trial, for the purpose of dividing the lots owned by the parties as tenants in common. We do not concur in that view. We do not think that the partition of lands is a proper matter to be incorporated in a bill in chancery, brought under section 7 of our Statute of Wills, to contest the validity of a will. Where a bill is brought to contest a will the stat-

ute requires an issue of law to be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury. Whether the instrument produced is the will of the testator or not is the question, and the only question, properly involved in a bill brought under the statute to contest a will. On a bill in chancery or petition for partition of lands the question presented is usually one of title to lands,—a question to be determined by the court from the evidence introduced by the respective parties. The latter proceeding is one in no manner connected with a bill brought under the statute to contest a will. In Story's Equity Pleading (sec. 275) the author says: "So where a bill was brought for a partition and also to set aside a lease made by the plaintiff to a third person of a part of the estate, on the ground of fraud, it was held that the bill was multifarious, for the parties against whom the petition was sought ought not to be involved in any litigation as to the validity of the lease in which they had not any interest." What is there said applies here. It is true, the objection that a bill is multifarious is usually taken by demurrer, and when not so taken may be regarded as waived; but courts may, on the trial of a case, *suo sponte*, enforce the objection. (Story's Eq. Pl. 284; *Gilmore* v. *Sapp*, 100 Ill. 297.) Moreover, it nowhere appears that the appellant requested or desired the court to retain the bill for partition. If the appellant desired the bill retained for that purpose, after the court overruled the motion for a new trial and disposed of the case as to the validity of the will she ought to have applied to the court, by motion or in some other appropriate manner, to have the bill retained for partition, and as she failed to do so she can not now complain of the action of the court.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*