CATHERINE E. CUNNIFF *et al.* Appellants, *vs.* JOHN CUN-
NIFF, JR., *et al.* Appellees.

*Opinion filed October 26, 1912.*

1. WILLS—*a will is not void because no provision is made for
minor child.* The fact that the testator makes no provision for his
minor child is not, of itself, ground for holding the will void, even
though the law casts upon a parent, while living, the burden of
supporting his minor children.

2. SAME—*inequality of distribution of estate does not impair
validity of will.* The fact that the testator gives the bulk of his
estate to two of his sons, gives small legacies to his two daugh-
ters and makes no provision for one minor son does not impair the
validity of the will, but is only a circumstance to be considered by
the jury in passing upon the questions of undue influence and men-
tal capacity.

3. SAME—*when charge of undue influence is not sustained.* A
charge of undue influence by the two sons of the testator, who
were the chief beneficiaries of the will, is not sustained by the
mere fact of the unequal distribution of the estate, coupled with
proof of an alleged declaration of the testator to the effect that
the two boys were trying to get him to leave his property to them,
where the evidence shows that he went with a neighbor to an at-
torney's office and executed the will, and that no one but the tes-
tator, the neighbor and the attorney were present.

4. SAME—*when alleged declaration of devisee is not admissible.*
Where the two sons of the testator are the chief beneficiaries of
the will, their interest being in common and not joint, an alleged
declaration of one of them to the effect that they had induced the
testator to make a will and leave them his farm is not admissible,
upon the question of undue influence, to conclude the other devisee.

5. SAME—*expert opinion based upon hearing part of the testi-
mony is not admissible.* It is proper for the court to refuse to
allow an expert medical witness to give his opinion as to the tes-
tator's condition of mind, based upon the portion of the testimony
in the case which he heard.

6. The court reviews the evidence in this case, and holds that
it sufficiently establishes that the testator was of sound mind when
the will in question was executed, and that, though much addicted
to the use of intoxicating liquor, he was not intoxicated when he
made the will.

APPEAL from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding.

CARL E. SHELDON, for appellants.

JACOB CANTLIN, and MCMAHON & ROGERS, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Whiteside county sustaining the last will and testament of John Cunniff, deceased. Cunniff died seized of a farm worth from $16,000 to $20,000 and a small amount of personal property. He left surviving him five children,— Catherine E., Elizabeth H. and Edward F., who were complainants in the bill, and John and William M., who, with John, as executor, were the defendants. By his will he bequeathed $500 each to Catherine and Elizabeth, and left all the remainder of his property, real and personal, equally to John and William, the bequests to the daughters being made a charge on the real estate. Nothing was given by the will to Edward.

It is first urged that the will is void as against public policy, for the reason that no provision was made for Edward, a minor. The will was executed July 7, 1909, and the testator died January 2, 1911. At the time of the execution of the will Edward was seventeen years of age. At the time this child was born John Cunniff resided with his family on his farm, in Whiteside county. His wife died at the birth of Edward. At the request of the testator, the child, Edward, was taken into the home of John Mee, a brother of Mrs. Cunniff, and thereafter made his home with Mee and his wife and was reared as one of their children. Shortly after the death of his wife the testator removed with his children to the city of Sterling, and within a short time the two girls, Catherine and

Elizabeth, were also taken by John Mee and his wife and made their home thenceforth with them. The ground upon which it is claimed the will is void is that the law casts upon a father the burden of the support of his minor children, and a will which makes no provision whatever for a minor is necessarily void. The law does cast this burden upon the parent while living, but the question to what extent, if any, this burden is cast upon the estate of a deceased parent is not involved in a suit to contest the validity of a will. The testator has the undoubted right to dispose of his property as he may think best, and the fact that the property may be divided unequally among his relatives, or that some of those having claims upon his bounty may have been entirely cut off, does not impair the validity of the will. It is only a circumstance which the jury may consider, in connection with other evidence, in passing on the soundness of mind of the testator or on the question of the exercise of undue influence. *Hollenbeck* v. *Cook,* 180 Ill. 65; *Schmidt* v. *Schmidt,* 201 id. 191.

Numerous grounds have been assigned for error, and an examination of the record discloses that error was committed which in a close or doubtful case would require a reversal. We do not deem a discussion of all the points raised necessary to a decision of the case, as under the state of the evidence no other verdict than one sustaining the will would have been justified.

The bill alleged that at the time of the execution of the will the testator was of unsound mind, and that the will was procured by the undue influence of the sons John and William and others who are unnamed. There is no evidence in the record to sustain the charge of undue influence. Aside from the inequality of the distribution of the property, which in itself is not conclusive evidence of undue influence although it may be considered as a circumstance to establish it, (*Francis* v. *Wilkinson,* 147 Ill.

370; *Schmidt* v. *Schmidt, supra;*) the only testimony on that subject was that of two witnesses to the effect that the testator had said that the "gang,"—presumably referring to a Mrs. Doyle and appellees,—were trying to persuade him to leave his property to the boys John and William, but that he intended to treat all five of his children alike. None of his children were present when the will was executed, and this statement of the testator is the only evidence admitted which connected the two sons in any way with the execution of the will. At the time the will was executed the testator was living on his farm. On the morning of that day he called on one of his neighbors and asked him to go to Rock Falls with him to witness the execution of his will. The neighbor went with him and was present when the will was drawn and executed in the office of an attorney, no one else being present except the testator, the attorney and the neighbor who acted as a witness.

On the question of testamentary capacity clear and convincing proof was made that the testator was of sound mind and memory at the time of the execution of the will. Twenty-eight of his neighbors and friends were called, among them men who had known him for almost a lifetime and others whose acquaintance extended over a period of many years, who testified in detail to the extent of their acquaintance with him, the social relations sustained and the business transactions had with him. These witnesses included men from many walks of life,—farmers, lawyers, merchants and laborers. Most of them were persons who were intimately acquainted with the testator for many years and who had the best possible means of knowing his habits and characteristics and of judging of his mental condition. These witnesses all testified that he was of strong mentality and a man of firm convictions. This testimony was in no way overcome by that offered on the part of appellants. While nineteen witnesses were called

on behalf of appellants, but five of them ventured an opin-
ion as to the mental capacity of the testator.   Appellants
rely chiefly upon the fact that testator was addicted to the
excessive use of intoxicating liquors and that he was fre-
quently intoxicated in recent years, and fourteen of their
witnesses testified only to occasions on which they had seen
Cunniff intoxicated.   It is apparent from the testimony of
these witnesses, as well as of some of the witnesses on be-
half of the appellees, that the testator was frequently in-
toxicated.   The proof on the part of appellees is that he
was sober at the time the will was executed, and this is
not contradicted.

The five witnesses who testified that testator was of
unsound mind were Ella Mee, the wife of John Mee, who
died prior to the death of testator; Sim Mee, her son;
Delia Keefe, her sister; W. M. Rourk, her brother; and
Martin Mee, a brother of John Mee.   Mrs. Mee testified
that she had known that the testator was of unsound mind
for more than twenty years, but she related but four in-
stances upon which she based her opinion.   One of these
was, that when the boy Edward was two years of age she
allowed Cunniff to take him and her infant son, about six
months old, for a drive behind a horse which both she and
Cunniff knew to be fractious and unreliable.   Upon his
return from the drive Cunniff left the two children in the
buggy in an alley near the Mee home, in Sterling, and de-
parted without tying or securing the horse in any manner.
On one occasion, at Cunniff's request, she accompanied
him to a greenhouse to purchase flowers to be placed in
the cemetery on Decoration day; that she drove with him
to the cemetery, dismounted from the carriage, and on
turning around in a few moments found that Cunniff had
driven away with the flowers, leaving her alone in the
cemetery, and she did not see him· again for two weeks.
In April, 1909, she asked him to go for some medicine for
one of her children who was sick; that he departed and

did not return for two weeks, when he brought the medicine. On another occasion he borrowed Mrs. Mee's lawn mower to mow the cemetery lot in which Mrs. Cunniff and Mr. Mee were buried and returned it in about two hours and told her he had mowed the lot. On observing the following day that the lot had not been mowed she asked him about it, and he said he had mowed somebody's lot. From these circumstances she concluded that he was of unsound mind. Sim Mee, her son, a young man nineteen years of age, testified that his father had been a fire insurance agent and that upon his death the boy succeeded to one of his agencies; that testator held a policy insuring him against loss from fire in the company which the witness represented, and after some of his property had been destroyed by windstorm in July, 1909, he insisted upon the loss being made good under his fire insurance policy, and when his nephew explained that the company was not liable under the terms of its policy, testator insisted upon the witness paying the amount of the loss himself, and when he would not do so, canceled the policy. Mrs. Keefe testified that on one occasion testator told her that he had gotten lost the evening before and had met a man who told him where he was, and that he had great difficulty in getting home; that he was sober at the time, and it seemed to him that his mind was a blank. Rourk testified that on one occasion testator told him that he was afraid he was losing his mind; that he imagined there was someone after him all the time; that at about two o'clock on one afternoon in the winter of 1909, in Sterling, he asked the testator where he was going, and he said he was going after his team; that he had gotten lost several times going home and that he wanted to start home early. This witness at one time was engaged in the grocery business, and testified that while the testator was living in Sterling he would come in and tell him to give the children any groceries they would order and then in a few days would

tell him not to give them anything. Martin Mee, who resided in Gladbrook, Iowa, testified that he saw Cunniff during the last twenty years about three or four times a year, and that at one time, during the years 1878 and 1879, he lived with him for five months. Without detailing any circumstances upon which his opinion was based, this witness testified that he believed Cunniff to be of unsound mind in 1909. Each of these witnesses testified that the testator was in the habit of becoming intoxicated frequently, and also testified to his friendly relations with each of his children and to the fact that he seemed to regard them equally in his affections.

It is objected that Mrs. Keefe was not permitted to detail a conversation had with William M. Cunniff in which he stated, "We have got the old man to make a will and leave us boys the farm, and I want to keep on the good side of him," and that Mrs. Mee was not permitted to testify to a conversation she had with William. No offer of proof was made in connection with the testimony of Mrs. Mee, but the matter excluded was evidently in regard to admissions as to what had been done to influence the testator in making his will. This same question was before us in *Campbell* v. *Campbell,* 138 Ill. 612, and it was there held that evidence of the declarations of Campbell was not admissible, for the reason that he, as one of the devisees, had an interest in common with all claiming under the will, and that proof of his declarations could not be received in evidence to conclude the rights of others who take under the will. Here John and William have a common and not a joint interest, (*McMillan* v. *McDill,* 110 Ill. 47,) and under the holding in the *Campbell case* this evidence was properly excluded.

A physician was called by the contestants to testify as an expert. He was present in the court room and heard a part of contestants' witnesses testify. When called as a witness, after testifying that he had heard a portion of

the testimony, he was asked if, from such testimony as he had heard, he had formed an opinion as to the condition of mind of the testator. To this question an objection was sustained. This was not error. The witness was allowed to give his opinion in response to a hypothetical question which contained all the elements upon which the appellants were relying, so, in any event, they have no ground for complaint.

The great preponderance of the evidence is that the testator was of sound mind, and under this state of the record the jury would not have been justified, under any circumstances, in coming to any other conclusion than the one reached. The errors contained in the record, which consist of the admission of evidence that the will had been admitted to probate, the exclusion of evidence on matters of minor importance and of some inaccuracies in the instructions, cannot, therefore, be such as to require a reversal, and we do not deem a detailed discussion of them necessary.

The decree of the circuit court is affirmed.

*Decree affirmed.*