SARAH J. BALE, Appellee, *vs.* RICHARD BALE *et al.* Appellants.

*Opinion filed December 22, 1909.*

1. CLOUD ON TITLE—*when provision of will may be set aside.* Where a father gives his son a tract of land as compensation for services of the son after he became of age, and the son takes possession of the land, makes improvements equaling its original value and pays the taxes for twenty-one years, during which time his rights as owner are recognized and unquestioned, a provision of the father's will giving the son only a life estate in the land may be set aside as a cloud upon the son's title.

2. PARTIES—*usual practice where party in interest dies pending litigation.* Where a party in interest dies pending litigation, it is the usual practice to make those who succeed to his interest parties to the suit upon suggestion of his death and their interest.

3. SAME—*when amendment of pleadings is not necessary upon substitution of widow as complainant.* Where the complainant in a bill to set aside a provision of his father's will as a cloud upon complainant's title to certain land dies pending the litigation, his widow, who is the devisee of the land in question under his will, may be substituted as complainant without requiring the pleadings to be amended so as to set up the deceased complainant's will and give the defendants an opportunity to contest the widow's right to the land under such will.

APPEAL from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding.

WINSLOW EVANS, and FRANCIS H. TICHENOR, for appellants.

RADLEY & RADLEY, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

William Bale, Jr., filed his bill in the circuit court of Peoria county for the purpose of setting aside the will of his father, William Bale, Sr., as a cloud on his title to the north half of the south-east quarter of section 14, township 10, north, range 6, east of the fourth principal meridian, in Peoria county, Illinois, and to quiet his title thereto. The complainant charged in his bill that he had been in the open, adverse possession of the land in question for more than twenty-one years under a claim of title; that William Bale, Sr., had by his last will, which had been probated and admitted to record, devised to him the land in question for his life, charged with the payment of $600 to his sisters and $25 per year to his mother, and the remainder in fee was devised to the complainant's brothers, Richard and George. The defendants below answered the bill, denying all of the material averments as to complainant's claim of ownership and title, and after the filing of the replication the case was referred to a master to take the proofs and report the same, together with his conclusions of law and fact. The master found that William Bale, Sr., had left a last will containing provisions, as set out in the bill, which affected the title to said land, and also found that complainant was the owner of said land, and that the provisions of the will of William Bale, Sr., in so far as they applied to the lands in question, constituted a cloud upon the title. Objections were duly filed to the several findings of the master and overruled, and the same were allowed to stand as exceptions in the court below. After the master's report had been filed and before the hearing upon the exceptions, William Bale, Jr., the complainant, died. His death was suggested upon the record, and thereupon Sarah J. Bale, his widow and devisee of the land in question under the will of her husband, was substituted as party complainant. The court overruled all

of the exceptions to the master's report and entered a decree in accordance with the prayer of the bill. Defendants below have appealed to this court, and insist that the evidence is insufficient to warrant the decree.

The evidence shows that William Bale, Sr., was a farmer and resided on a tract of land adjoining the premises in controversy, in Peoria county, for many years prior to and at the time of his death; that William Bale, Jr., Richard Bale and George Bale were his sons, and Amelia Slane, Ann Bale and Elizabeth Challacombe were his daughters; that William Bale, Jr., remained with his father about ten years after he became of age and worked for his father during this time; that William Bale, Sr., recognized his obligation to compensate his son for the services rendered after he attained his majority. The evidence shows that the father considered that he ought to pay the son $100 a year for his work, or a total of $1000; that on February 20, 1881, William Bale, Sr., purchased the eighty acres of land involved in this suit for $1000, one-half of which he paid at the time and secured the remainder by a mortgage upon the premises; that this mortgage was afterwards duly released of record on May 2, 1882, the same having been paid in full by William Bale, Sr. The evidence also shows that William Bale, Sr., told William Bale, Jr., that he would give him this eighty acres of land in payment for his ten years' services, or, if the son preferred it, he would give him $1000 in money, but said, however, that he did not have the money, and if the son insisted on having the $1000 in cash he would have to borrow it for him; that the son said that he would accept the land. At this time William Bale, Jr., was unmarried and still living at home with his father. The eighty acres of land in question, at the time it was purchased, had no improvements of any considerable value upon it. The only improvement in the way of buildings was an old dilapidated house, which was unfit for occupancy. On Decem-

ber 25, 1885, William Bale, Jr., married, and after having spent $300 or $400 in fixing up the old house, moved into it with his wife and took up his permanent residence on the premises. He resided on these premises continuously until in February, 1906, when he leased the farm for one year, from March 1, 1906, to March 1, 1907, at a rental of $100, to Raymond Derby, to whom possession was surrendered in pursuance to the terms of the lease. At the request of William Bale, Jr., the tax books were changed so as to show that the premises were assessed to William Bale, Jr., instead of William Bale, Sr. This occurred in 1886. It is not disputed that William Bale, Jr., paid all of the taxes assessed on these premises from the time he took possession thereof, in 1885, up to the time this suit was commenced,—a period of about twenty-one years. The evidence shows that William Bale, Jr., cultivated the premises during all of the time after he took possession thereof and raised a crop thereon each year, which he appropriated to his own use without paying any rent and without any recognition whatever of any right or title in his father; that during this time he placed permanent and valuable improvements on the farm, all of which were paid for by him; that he built fences, dug a well and built a barn which cost about $400, and planted many fruit trees on the place. The aggregate value of all of the improvements was about equal to the original value of the land. The evidence of possession, payment of taxes and the making of improvements is not controverted. Appellants contend that the possession was not adverse to the title of William Bale, Sr., and this is the principal ground upon which appellants insist that the decree should be reversed.

Without going into the evidence in detail, it is sufficient to say that appellee introduced a large number of witnesses who were the neighbors and associates of William Bale, Sr., who testified to numerous statements and admissions made by William Bale, Sr., to the effect that he called this eighty

acres William's place, and that he had given it to him, and that his son was going to fix up the place and make it his home. It is also shown that William Bale, Jr., claimed to be the owner of the land and frequently said that his father had promised to make him a deed, and that he would do so. There are a large number of admissions of this kind testified to by witnesses on behalf of the appellee. On the other hand, there are no facts testified to that are inconsistent with the claim made by appellee that this land was given to William Bale, Jr., by his father to compensate him for his services. The clear preponderance of the evidence supports the averments of the bill.

Appellants contend that the court erred in proceeding to a hearing after the substitution of Sarah J. Bale as party complainant without an amendment of the pleadings setting up the will of her husband and giving appellants an opportunity to traverse and contest her right to her husband's interest under his will. There is no showing made by appellants that any reason existed why Sarah J. Bale did not succeed to her husband's interest in the land by virtue of his will. It is the usual practice when a party in interest dies pending litigation, to make those who succeed to his interest parties on a mere suggestion of his death and of their interest. There is no merit in this claim. The validity of the will of William Bale, Jr., was not involved. If the testator was the owner, in equity, of the premises in question at the time of his death, his widow would undoubtedly be a proper party to be substituted in his stead, regardless whether his will was valid or invalid. The question as to the extent of her interest is not involved in this proceeding.

Finding no error in the record the decree of the circuit court is affirmed.                    *Decree affirmed.*