SARAH P. DIBBLE *et al.* Appellants, *vs.* ANTOINETTE
THAYER WINTER, Appellee.

*Opinion filed October 28, 1910—Rehearing denied Dec. 9, 1910.*

1. PLEADING—*what allegation in bill to set aside copy of will is
not a conclusion of law.* In a bill to set aside as a cloud upon
complainants' title an authenticated copy of a will, an allegation
that the testator died "leaving him surviving as his heirs-at-law
and next of kin his two sisters," the complainants, is an averment
of fact and not a conclusion of law.

2. CLOUD ON TITLE—*when a bill attacking will cannot be main-
tained as a bill to remove a cloud.* A bill seeking to set aside a
foreign will, a duly authenticated copy of which has been filed with
the clerk of a probate court in Illinois, cannot be sustained as a
bill to remove a cloud from the title of complainants, who claim
the land in Illinois by inheritance. (*Bale* v. *Bale,* 242 Ill. 519, and
*Bieber* v. *Porter,* 242 id. 616, explained.)

3. WILLS—*when bill is, in effect, a proceeding to contest a will.*
When the only relief that can be granted in a chancery proceed-
ing is to set aside a will and render it null and void, the same as
in a contest under section 7 of the act relating to wills, the pro-
ceeding is, in effect, the contest of a will and must be governed by
the law relating to such contests.

4. SAME—*force of probate of foreign will.* A decree admitting
to probate a will disposing of personal property is conclusive as to
the capacity of the testator and the due execution and validity of
the will, but if the will affects real estate the probate establishes
nothing beyond the validity of the will in the State where it is
probated, and its validity as a will in other States depends upon
its execution in conformity with their laws.

5. SAME—*force of foreign will affecting real estate.* The pro-
bate of a will in one State, though conclusive as to personal prop-
erty if made at the testator's domicile, can have its force as a de-
vise of lands in another State only by virtue of some law of the
State where the land is situated.

6. SAME—*right to contest a will in chancery is purely statutory.*
The right to contest a will in chancery is not a vested right but is
a purely statutory one, which, if the legislature sees fit, may be
abrogated.

7. SAME—*section 9 of the Wills act construed.* Section 9 of
the Wills act, providing that foreign wills, or authenticated copies
thereof, proven according to the laws of the foreign country, shall,

when accompanied by the proper certificate, "be recorded as aforesaid, and shall be good and available in law in like manner as wills made and executed in this State," means recorded by the clerk of the county or probate court as provided for in section 2 of such act, and when so recorded letters of administration may be granted thereon the same as in case of wills formally probated in Illinois.

8. SAME—*section 7 of statute authorizing contest of wills applies to all wills.* The provisions of section 7 of the Statute of Wills, relating to contests in chancery, apply to any will, or authenticated copy thereof, upon which letters of administration are authorized to be issued under section 2 of such act. (*Stull* v. *Veatch,* 236 Ill. 207, and *Amrine* v. *Hamer,* 240 id. 572, explained.)

9. SAME—*bill to contest a will is not a collateral attack.* A bill to contest a will in chancery is a direct attack upon the judgment of probate and not a collateral attack, such as is a bill for partition or a bill to quiet title.

10. SAME—*a bill lies under section 7 to contest a foreign will.* When a duly authenticated copy of a foreign will disposing of land in Illinois is filed with the clerk of the probate court, a bill to contest such will upon the ground that it was not the will of the testator may be maintained under section 7 of the act relating to wills, if the bill is filed within one year from the time such authenticated copy was filed.

11. SAME—*effect of successful contest of foreign will.* The effect of a successful contest of a foreign will a duly authenticated copy of which is filed with the clerk of a probate court in Illinois, merely prevents the will from operating upon real estate in Illinois and leaves such real estate to be governed by the statute regulating the descent of real property.

VICKERS, C. J., and DUNN and COOKE, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

ALBERT M. KALES, and HENRY SCHOFIELD, for appellants:

The Michigan probate is not conclusive as to real estate in Illinois on the issues of testamentary capacity, fraud and undue influence. *Brigham* v. *Fayerweather,* 140 Mass. 411; *Tilt* v. *Kelsey,* 207 U. S. 43; *Frame* v. *Thormann,* 102 Wis. 653; 176 U. S. 350; *Overly* v. *Gordon,* 177 id. 214; *Concha* v. *Concha,* 11 App. Cas. 541; 29 Ch. Div.

268; *Pennel's Lessee* v. *Weyant,* 2 Harr. 501; *Rice* v. *Jones,* 4 Call, 89; *Sneed* v. *Ewing,* 5 J. J. Marsh. 460; *Chidsey* v. *Brookes,* 60 S. E. Rep. 529; *Robertson* v. *Pickrell,* 109 U. S. 6c8; *Daly* v. *Mayer,* 10 Wheat. 465; *McCormack* v. *Sullivant,* 10 id. 192.

The full faith and credit clause of the Federal constitution cannot require the courts in Illinois to give effect to the Michigan probate as a conclusive judgment *in rem* on the issues of testamentary capacity, fraud and undue influence with regard to real estate in Illinois. *Fall* v. *Eastin,* 215 U. S. 1; *Frame* v. *Thormann,* 102 Wis. 653; 176 U. S. 350; *Keith* v. *Keith,* 97 Mo. 223; *Sneed* v. *Ewing,* 5 J. J. Marsh. 460.

Section 9 of our Wills act does not cause the Michigan probate to be conclusive on the issues of testamentary capacity, fraud and undue influence so far as concerns real estate in Illinois. *Ice Co.* v. *Winsor,* 148 Ind. 682; *Stevens* v. *Oliver,* 200 Mo. 492; *Lynch* v. *Miller,* 54 Iowa, 516.

The court below had jurisdiction, by the bill filed, to entertain the questions whether the testator had proper testamentary capacity and whether the will was obtained by fraud and undue influence, because it is good as a bill filed to contest a will under section 7 of the Wills act, and is good as a bill by the complainants in possession to remove the will and authenticated copy of probate as a cloud upon the complainants' title. *Boyse* v. *Rossborough,* 3 DeG., M. & G. 817; 6 H. L. Cas. 2; *Colater* v. *Bryan,* 1 Gratt. 18; *Sneed* v. *Ewing,* 5 J. J. Marsh. 460; *Brady* v. *McCosker,* 1 N. Y. 214; Pomeroy's Eq. Jur. (3d ed.) 138.

That a will may be a cloud on title is recognized in *Bale* v. *Bale,* 242 Ill. 519, and *Bieber* v. *Porter,* 242 id. 616.

MORRIS ST. P. THOMAS, for appellee:

The bill does not allege that Samuel Blair Winter, under whom complainants claim, died intestate, nor is there any sufficient allegation that complainants are his heirs-at-

law. The allegation that he died "leaving him surviving as his heirs-at-law and next of kin his two sisters, your oratrices," is a conclusion of law and not a statement of fact and was not admitted by the demurrer. *Baker* v. *Harwood,* 1 Sim. Ch. 373; *Reiners* v. *Brandhorst,* 59 How. Pr. 91; *Henriques* v. *Yale University,* 28 N. Y. (App. Div.) 354; *File* v. *Orr's Assignee,* 1 S. W. Rep. 582; *Larue* v. *Hays,* 7 Bush. 50; *Daley* v. *O'Brien,* 29 Ky. 811; *Toler's Heirs* v. *Toler,* 33 id. 594.

The filing and recording in the office of the clerk of the probate court of Cook county of a properly authenticated copy of the will and of the order of the probate court of Ottawa county, Michigan, admitting the same to probate, made the will effective as a conveyance of the testator's real estate in Illinois to the same extent as though the will had been made and probated in Illinois. *Stull* v. *Veatch,* 236 Ill. 207; Rev. Stat. chap. 148, sec. 9; *Amrine* v. *Hamer,* 240 Ill. 572.

The words "shall be recorded as aforesaid," used in section 9 of the Wills act, refer to the recording by the clerk of the county or probate court, and not by the recorder of deeds. *Bliss* v. *Seeley,* 191 Ill. 461.

The only jurisdiction of a court of equity in this State to entertain a bill to set aside a will or its probate is derived from the seventh section of the Statute of Wills. (*Selden* v. *Bank,* 239 Ill. 67.) That section is to be construed strictly. *Storrs* v. *St. Luke's Hospital,* 180 Ill. 368.

The courts of review in Illinois have apparently had no occasion to decide whether section 7 of the Wills act authorizes contest in chancery of a foreign will not probated in this State, but it seems clear from a consideration of that section, in connection with the entire act, that the only contest contemplated is a contest of wills which have been actually probated in a county or probate court of this State. Such has been the construction of similar statutes in other

jurisdictions. *Montana* v. *District Court,* 34 Mont. 96; *Stevens* v. *Oliver,* 200 Mo. 492; *Cohen* v. *Herbert,* 205 id. 537.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed in the superior court of Cook county on December 7, 1909, by appellants, Sarah P. Dibble and Estella W. Gair, to declare null and void and set aside as a cloud on the title of certain real estate in that county an instrument purporting to be an authenticated copy of the will of Samuel Blair Winter, theretofore filed with the probate clerk of said Cook county in accordance with sections 2 and 9 of the Illinois statute on wills. The bill as amended sets forth that the original of the copy so filed is not the last will and testament of said Samuel Blair Winter; that said Winter at the date of said pretended will was, and had been for many years, completely paralyzed from his waist down; that he was at that time, and for a long time prior thereto, and afterwards until his death, of unsound mind and memory; that owing to his impaired mind and physical condition he was easily influenced, and at the date of said instrument was entirely in the hands of the appellee, Antoinette Thayer Winter, and dependent for his physical care upon her; that she was a woman of mature and able physical and mental powers and of a strong and aggressive will, possessing more than usual influence over said Winter, and had, owing to the absence of all his friends, relatives and advisers, and on account of his physical and mental weakness, succeeded in assuming with him the position of confidential agent and adviser in all his business affairs; that if said instrument was executed by said Winter (which is not admitted) its execution was obtained by fraud of the said Antoinette Thayer Winter and by her taking advantage of said Winter's lack of physical and mental powers, so that it was the result of her will and volition rather than his; that said Antoinette Thayer Winter procured the pre-

tended execution of said instrument by means of false and fraudulent representations, which she knew to be such and upon which said Winter relied and acted. The bill further alleges that said Samuel Blair Winter died about December 27, 1908, seized of an undivided one-third of certain real estate in Cook county, Illinois, and a possible interest (depending upon the construction of the will of his father) in certain other real estate in Cook county; that about April 12, 1909, there was filed in the probate court of Cook county, on behalf of appellee, an instrument purporting to be the will of said Samuel Blair Winter, and the record of the probate thereof in the probate court of Ottawa county, Michigan, on March 29, 1909. This instrument is set out *in hæc verba* in the bill, and provides that after the payment of just debts and funeral expenses all of testator's estate, real and personal, shall go to his wife, appellee herein, as her sole property. She is also appointed executrix. The prayer of the bill, after asking for an answer, is, that said instrument may be declared null and void and set aside as a cloud upon the title of the orators, and that the record thereof in the office of the clerk of the probate court be removed, set aside, canceled and expunged from the records of said office, and for such other and further relief as to equity may seem meet. A general demurrer filed by appellee was sustained by the trial court and a decree entered dismissing the bill for want of equity. From that order this appeal was taken.

Counsel for appellee contends that the demurrer was properly sustained because the bill did not allege that the testator died intestate. We think the bill is not lacking on this point.

It is further contended that the allegation in the bill that the testator died "leaving him surviving as his heirs-at-law and next of kin his two sisters," appellants herein, is a conclusion of law and not a statement of fact admitted by the demurrer. A similar allegation has been held to be

a statement of fact in *Physio-Medical College* v. *Wilkin-son,* 108 Ind. 314, and *Groerer* v. *Groerer,* 90 N. E. Rep. (Ind.) 757. A like allegation was conceded by all counsel to be sufficient in *Selden* v. *Illinois Trust and Savings Bank,* 239 Ill. 67. "Almost any statement of fact may be shown by a refined analysis to depend upon an inference to be drawn from other facts and to require the application of legal rules in making the deduction." (*Koch* v. *Arnold,* 242 Ill. 208.) Whatever may be the holding in other jurisdictions, we are disposed to hold, on principle as well as under the authorities of this State, that the allegation in question is a statement of fact and not a conclusion of law. *Foss* v. *People's Gas Light and Coke Co.* 241 Ill. 238; *Bogda* v. *Glos,* 244 id. 575; *Pease* v. *Sanderson,* 188 id. 597.

Counsel for appellants suggest that the certificate to this will does not comply with the statute so as to entitle a copy to be recorded in this State, the argument being, that under section 9 of the statute on wills it is required that it should be certified as executed and proved "agreeably to the laws and usages of that State or country in which the same was executed," and that there is nothing in this record to indicate that this will was executed in the State of Michigan.. Without considering or deciding whether appellants' construction of section 9 on this point is correct, we deem it sufficient to say that we think the record shows that the will was executed in the State of Michigan.

Appellants argue that the bill in this cause should be sustained as one to remove a cloud on the title, under *Bale* v. *Bale,* 242 Ill. 519, and *Bieber* v. *Porter,* 242 id. 616. These decisions do not sustain that contention. The case of *Bieber* v. *Porter, supra,* simply stated, as did *McDonald* v. *White,* 130 Ill. 493, that where a party is in possession of the land in dispute claiming to hold the same under a will alleged to be invalid, a bill cannot be maintained by another claimant to set aside the will as a cloud upon the title. In each of these cases the only point decided was, that

a bill to quiet title can only be entertained when it is alleged and proved that the complainant is in possession of the premises or that they are vacant and unoccupied. In *Bale v. Bale, supra,* the will was not declared null and void and set aside as a cloud upon the title. The decision was, in effect, that a provision of the father's will giving to his son a life estate in certain lands which the son already occupied and owned in fee at the time the will was executed could be set aside as a cloud upon the son's title. The will was not thereby declared null and void, but it was held that the father had attempted to devise property which he did not own. This court has decided that a will contest cannot be injected into partition proceedings; that whether the instrument produced is the will of the testator is the only question properly involved in a bill brought under the statute to contest a will. (*Hollenbeck v. Cook,* 180 Ill. 65; *Tagert v. Fletcher,* 232 id. 197; *Kemmerer v. Kemmerer,* 233 id. 327; *Calkins v. Calkins,* 229 id. 68.) In *Keister v. Keister,* 178 Ill. 103, it was held that a bill for partition which alleged that the complainant was a tenant in common by inheritance but that defendants fraudulently procured a will devising the property to them, which was improperly admitted to probate and which constituted a cloud on complainant's title, was plainly one to contest said will by a bill in chancery; that the right to that relief was purely statutory, and could only be availed of under section 7 of the statute on wills. We have repeatedly held that the right to contest a will in chancery is a right conferred by statute, and independently of the statute no such right has ever been recognized by the courts of this State. (*Selden v. Illinois Trust and Savings Bank, supra; Waters v. Waters,* 225 Ill. 559; *Jele v. Lemberger,* 163 id. 338; *Luther v. Luther,* 122 id. 558.) In this case, as in *Keister v. Keister, supra,* the bill is one to contest a will by a bill in chancery, and the complainants could only have the relief in question by setting aside and rendering the entire will null and void

so far as it affects real estate in this State. When the only relief that can be had is to set aside a will and render it null and void, the same as would a contest under section 7 of the act on wills, it is, in effect, a contest of the will and must be governed by the rules of law controlling such contests. Sufficient facts were alleged in the bill in this case, and the prayer was so worded, as to sustain it as a bill to contest the will in question. This is practically conceded by counsel for appellee. This brings us to the principal question presented in the briefs.

After the will was probated in Michigan a copy was filed for record in the office of the clerk of the probate court of Cook county, duly authenticated in accordance with the provisions of section 9 of the act on wills. It is argued by counsel for appellee that the statute as to wills in this State must be strictly construed; that therefore only domestic wills, or wills probated in the same way as domestic wills, can be contested under section 7. The validity of bequests of personal property depends on the law of the testator's domicile, while the validity of devises of real property rests on the law of the place where the real estate is situated. It is therefore the general rule that a decree admitting a will of personal property to probate in the proper tribunal is conclusive as to the capacity of the testator and the due execution and validity of the will, but when the will affects real estate the probate establishes nothing beyond the validity of the will where it is probated. Its validity as such a will in other States and jurisdictions depends on its execution in conformity with their laws. (*Robertson* v. *Pickrell*, 109 U. S. 608; Wharton on Conflict of Laws, sec. 585; *Nelson* v. *Potter*, 50 N. J. L. 324.) The statutes on this question in some States have been construed by the courts as holding that the probate of a will in a foreign jurisdiction is conclusive as to its validity in the courts of domestic States not only as to the personal property but as to the real estate as well. In other jurisdictions such probate has been held

conclusive only as to the personal property. A review of the various decisions from other States on this question would be of little advantage, for the decisions in each State must depend upon the special wording of its statute. Our attention has not been called to any statute exactly similar in wording to our own. The various decisions are collected and classified in notes to *State* v. *District Court,* (Mont.) 9 Am. & Eng. Ann. Cas. 418, and *Martin* v. *Stovall,* 48 L. R.-A. (Tenn.) 130. The courts of one State are without jurisdiction over the titles of land in another State. A local statute has no extra-territorial force, and can be exercised only upon persons and property within the jurisdiction of the State where such statute is enacted. The law of the State where the real estate is situated governs exclusively. (*Smith* v. *Smith,* 174 Ill. 52.) The probate of a will in one State, though conclusive as to personalty if made at the testator's domicile, can have its only force in establishing the devise of lands in another State by virtue of some law of the State in which the lands are situated. (*Harrison* v. *Weatherby,* 180 Ill. 418.) This doctrine is consistent with the clause of the Federal constitution which requires full faith and credit to be given in each State to the records and judicial proceedings of every other State. (*Fall* v. *Eastin,* 215 U. S. 1; *Tilt* v. *Kelsey,* 207 id. 493.) Whether this will can be contested depends entirely upon the construction to be placed upon the statutes of this State. Appellants insist that if our statutes do not permit such a contest they will be deprived of a right guaranteed by the provisions of the Federal and State constitutions as to due process of law.

The laws of descent and the laws governing the right to dispose of property are statutory, as is also the right to contest a will in chancery. Under the common law the validity of wills of real estate could only be contested in an action at law, while wills of personal property were established by the ecclesiastical courts. (*Luther* v. *Luther, su-*

*pra;* 2 Pomeroy's Eq. Jur. sec. 913.)   No right existed in
favor of the heir to go into a court of chancery to contest
the validity of a will independently of statute.   (*Gaines* v.
*Fuentes,* 92 U. S. 10; *Luther* v. *Luther, supra;* Horner
on Probate Law,—2d ed.—sec. 69.)   The right to contest a
will is not a vested one.   The legislature, if it saw fit, could
abrogate all of the provisions of our statutes authorizing
will contests.   (*Sharp* v. *Sharp,* 213 Ill. 332; *Selden* v.
*Illinois Trust and Savings Bank, supra.*)   Can this will, the
duly authenticated copy being filed in the office of the pro-
bate clerk of Cook county, be contested in this State under
the provisions of our statute for the contest of wills?   Sec-
tions 2, 7, 9 and 10 of our statute on wills must be con-
strued in order to reach a proper conclusion on this ques-
tion.   Those sections read as follows:

"Sec. 2.   All wills, testaments and codicils, by which
any lands, tenements, hereditaments, annuities, rents or
goods and chattels are devised, shall be reduced to writing,
and signed by the testator or testatrix, or by some person
in his or her presence, and by his or her direction, and at-
tested in the presence of the testator or testatrix, by two or
more credible witnesses, two of whom, declaring on oath
or affirmation, before the county court of the proper county,
that they were present and saw the testator or testatrix sign
said will, testament or codicil, in their presence, or acknowl-
edged the same to be his or her act and deed, and that they
believed the testator or testatrix to be of sound mind and
memory at the time of signing or acknowledging the same,
shall be sufficient proof of the execution of said will, testa-
ment or codicil, to admit the same to record:   *Provided,*
that no proof of fraud, compulsion or other improper con-
duct be exhibited, which, in the opinion of said county court,
shall be deemed sufficient to invalidate or destroy the same;
and every will, testament or codicil, when thus proven to
the satisfaction of the court, shall, together with the pro-
bate thereof, be recorded by the clerk of said court, in a

book to be provided by him for that purpose, and shall be good and available in law for the granting, conveying and assuring the lands, tenements and hereditaments, annuities, rents, goods and chattels therein and thereby devised, granted and bequeathed.

"Sec. 7.    When any will, testament, or codicil shall be exhibited in the county court for probate thereof as aforesaid, it shall be the duty of the court to receive the probate of the same without delay and to grant letters testamentary thereon to the person or persons entitled, and to do all other needful acts to enable the parties concerned to make settlement of the estate at as early day as shall be consistent with the right of the respective persons interested therein: *Provided, however,* that if any person interested shall, within one year after the probate of any such will, testament or codicil in the county court as aforesaid, appear and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the circuit court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the practice in courts of chancery in similar cases; but if no such person shall appear within the time aforesaid, the probate shall be forever binding and conclusive on all of the parties concerned, saving to infants or *non compos mentis* the like period after the removal of their respective disabilities.    And in all such trials by jury as aforesaid the certificate of the oath of the witnesses at the time of the first probate, shall be admitted as evidence and to have such weight as the jury shall think it may deserve.

"Sec. 9.    All wills, testaments and codicils, or authenticated copies thereof, proven according to the laws of any of the United States, or the territories thereof, or of any country out of the limits of the United States, and touching or concerning estates within this State, accompanied with

a certificate of the proper officer or officers that said will, testament, codicil or copy thereof was duly executed and proved, agreeably to the laws and usages of that State or country in which the same was executed, shall be recorded as aforesaid, and shall be good and available in law, in like manner as wills made and executed in this State.

"Sec. 10. All wills, testaments and codicils, which heretofore have been or shall hereafter be made, executed and published out of this State, may be admitted to probate in any county in this State in which the testator may have been seized of lands or other real estate, or in which his personal estate or part thereof shall lie, at the time of his death, in the same manner, and upon like proof, as if the same had been made, executed and published in this State, whether such will, testament or codicil has first been probated in the State, territory or country in which it was made and declared or not. And all original wills, or copies thereof, duly certified according to law, or exemplifications from the records, in pursuance of the law of Congress in relation to records in foreign States, may be recorded as aforesaid, and shall be good and available in law, the same as wills proved in such county courts." *  *  *

It is argued by appellee that the provision of section 7 that "when any will  *  *  *  shall be exhibited in the county court for probate thereof as aforesaid," means that there shall be a contest only when wills are probated in accordance with the provisions of section 2, and does not refer to the provision for recording wills under section 9; that "aforesaid" in said section 7 means "going before," and that therefore said section 7 could not refer to the wills provided for in section 9. The last part of section 9 states that such wills, when they "shall be recorded as aforesaid, shall be good and available in law, in like manner as wills made and executed in this State." "Recorded as aforesaid," etc., means recorded with the probate clerk as provided for in said section 2. (*Bliss* v. *Seeley*, 191 Ill. 461;

*Catholic University* v. *Boyd,* 227 id. 281.) When a will has been so certified and recorded under the provisions of said sections 9 and 2 the county or probate court grants letters of administration thereon, and further proceedings are had the same as if the will had been originally probated in this State.

If there is any doubt as to the meaning of a statute, courts, in order to find its proper construction, may take into consideration the contemporaneous circumstances and historical facts which led to its enactment. (*City of Chicago* v. *Green,* 238 Ill. 258; 26 Am. & Eng. Ency. of Law, —2d ed.—p. 632; 2 Lewis' Sutherland on Stat. Const. —2d ed.—462.) In Great Britain, as we have seen, the ecclesiastical courts alone could take proof as to wills bequeathing personal property. As to lands they had no jurisdiction. (*Wells' will,* 5 Litt. 273; *Marriott* v. *Marriott,* 1 Strange, 666; *In re Payne's will,* 4 T. B. Mon. 423.) In England there were two modes of probate: one *ex parte* and one *inter partes.* One was proof of the will in "common form" and the other in "solemn form." By the first method the will was taken before the judge of the proper court of probate and proved by attesting witnesses without citing or giving notice to the parties interested. When, however, it was proved under the second method it was done upon the petition of proponent for a hearing and all persons having an interest were cited to be present. The executor of a will proved in common form might, at any time within thirty years, be compelled by any person having an interest therein to prove it in "solemn form." (*Luther* v. *Luther, supra; Waters* v. *Stickney,* 12 Allen, 1.) Previous to the time when notice was required to parties interested, (Hurd's Stat. 1909, par. 21, p. 2284,) the *ex parte* method of proving wills, under said section 2, (*Claussenius* v. *Claussenius,* 179 Ill. 545,) on the testimony of attesting witnesses was analogous to the probate in England in "common form," while the subsequent proceeding in equity to

contest the validity of a will is similar to the probate in "solemn form" by the executor upon being cited by the next of kin. (*Luther* v. *Luther, supra; McArthur* v. *Scott,* 113 U. S. 340.) Under the common law the probate of the will was held binding and could not be contested collaterally as to personalty, but where the question was as to the devise of lands the probate of the will as to real estate amounted to nothing. The devisee produced the will, and in such controversies had to prove it as any other paper, as well as the capacity of the testator to devise, on every trial. *Wells' will, supra; Sneed* v. *Ewing,* 5 J. J. Marsh. 460; Toller on Executors, *50-79; 10 Bacon's Abridgment, (Wilson's Am. ed.) p. 540; *Coalter's Exrs.* v. *Bryan,* 1 Gratt. 18; *Luther* v. *Luther, supra.*

Section 7, as to the contest of wills, was taken, in substance, in 1829, (Rev. Laws of Ill. 1828-29, sec. 5, p. 193,) from the 11th and 15th sections of the Kentucky law passed February 24, 1797. (*Rigg* v. *Wilton,* 13 Ill. 15; *Luther* v. *Luther, supra.*) The Kentucky statute was based on the Virginia act of 1785, which was a remodeling of an earlier Virginia act of 1748. (12 Hening's Laws of Va. p. 140; 1 Littell's Laws of Ky. p. 611.) Sections 2 and 9 of our act on wills were first adopted in this State in 1819 as sections 22 and 23 of an act to regulate the administration and descent of intestate estates. (Laws of 1819, p. 231.) They were in wording identical with the present' statute, with the exception that the then section 23 had a provision that within four years after the recording of such will, if it was proven that it was revoked, any parties aggrieved might have former proceedings as to the probating of the will reversed. Said sections 22 and 23 were substantial copies of sections 1 and 2 of a statute of Ohio on proving wills, adopted in 1805. (Stat. of Ohio, 1805, p. 173.) When the legislature of this State revised the law on wills, in 1829, it re-enacted said sections 2 and 9 as sections 2 and 7 of said latter act but omitted the proviso above re-

247—17

ferred to from said section 7. (Rev. Laws of Ill. 1828-29, p. 192.) Said sections 2, 5 and 7, as adopted in 1829, have remained unchanged in our statute on wills since that date, except as to the numbering of the sections, which are now sections 2, 7 and 9, heretofore set out.

In 1778 Illinois became a county of Virginia. Under the laws of Virginia at that time there was no provision for the probate of wills executed or probated outside of that colony, (4 Littell's Laws of Ky. appendix 2, p. 477,) but a will executed and probated within Virginia could be contested by a bill in chancery any time within seven years. (12 Hening's Laws of Va. sec. 11, p. 142.) A law was adopted in that colony with reference to proving foreign wills in 1789, wherein it was provided that such wills should be "contested and controverted in the same manner as the original might have been." 4 Littell's Laws of Ky. appendix 2, sec. 7, p. 484; Abridgment of Public Laws of Va. 1796, sec. 14, p. 335.

The ordinance of 1787 established the Northwest Territory July 13, 1787. That ordinance provided that the Governor and judges to be appointed should have authority to make laws for the territory, and until they "shall adopt laws as hereinafter mentioned, estates in said territory may be devised or bequeathed by will in writing, signed, sealed and delivered by him or her in whom the estate may be (being of full age) and attested by three witnesses." (Maxwell's Laws of Northwest Territory, p. 3.) While Illinois was a part of the Northwest Territory the authorities passed no law providing, in terms, for will contests, but the Governor and judges adopted an act June 19, 1795, (Maxwell's Laws of Northwest Territory, p. 148,) copied from the Pennsylvania code, (Read's Digest of Penn. Laws, 1801, p. 384,) which, among other things, provided for proving wills in the Northwest Territory on the testimony of two or more credible witnesses and also for foreign wills being recorded in this State for the purpose of conveying title to lands,

and further provided that if any of the wills "whereof cop-
ies or probates shall be so as aforesaid produced and given
in evidence, shall within seven years after the testator's
death appear to be disproved or annulled before any judge
or officer having cognizance thereof or shall appear to be re-
voked or altered by the testator," etc., then parties who may
have been aggrieved by the former proceedings might have
certain remedies.    It is plain from this section that it was
understood there was some method of contesting every will.
No specific provisions for contesting wills having been made
by the authorities of said Northwest Territory, the common
law of England, of a general nature and applicable to our
condition, and all statutes in aid thereof and to supply de-
fects therein prior to the year 1607, were in force in the
Northwest Territory at that time.    *Lavalle* v. *Strobel*, 89
Ill. 370; Maxwell's Laws of Northwest Territory, p. 175;
Laws of Indiana, Aug. 1807, to Nov. 1811, p. 139; 1 Pope's
Laws of Ill. Territory, p. 34; 1 Starr & Cur. Stat. sec. 1,
p. 901.

The Northwest Territory was divided into two territo-
ries in 1800, one being the eastern division of the territory
north-west of the Ohio, (the present State of Ohio,) and
all the rest of the Northwest Territory being formed into
the territory of Indiana.    The provisions of said act of
June 19, 1795, with reference to probating wills and receiv-
ing them in evidence, above referred to, were adopted *ver-
batim* as sections 32 and 33 of an act concerning the grant-
ing of letters testamentary and letters of administration for
the settlement of estates in the territory of Indiana, Sep-
tember 17, 1807.    (Territorial Laws of Indiana, Aug. 1807,
to Nov. 1811, pp. 84-88.)    The territory of Illinois was
organized in 1809, and these sections were in 1812 incorpo-
rated into the territorial laws of Illinois.    Pope's Laws of
Ill. Territory, pp. 215, 216.

We find no provision in the territorial laws of Indiana
while Illinois was a part of that territory, or in the laws of

Illinois while it was a territory by itself, in any way providing for or referring to the contest of wills, except the general reference above quoted as to wills which should be "disproved or annulled," which indicates that all wills could be contested. The first specific provision as to contesting wills in the laws applying to what is now Illinois was a statute passed February 10, 1821, (Laws of 1821, p. 119,) creating a probate court, and providing among other things (sec. 5,) "that any person or persons interested may contest any will, but in all such cases all such persons interested shall have notice by summons at least twenty days before the day assigned for trial." Section 9, with reference to the authenticating and filing of foreign wills, had already been adopted in 1819 and was then in force in the State. Said section 5 provided for the contest of "any will." Beyond question it included not only domestic wills probated in this State, but foreign wills that were filed here for record under the provisions of the then section 23 of the act of 1819, (present section 9.) Evidently this contest was to be very similar to the probate in "solemn form" as provided for under the common law.

Under the common law, as we have seen, there could be a contest every time the will was offered in evidence. At the time present sections 2, 7 and 9 were incorporated in the act on wills of 1829, (being substantially copies of the statutes of Ohio, Virginia and Kentucky,) in every one of those States a copy of a foreign will, duly authenticated and recorded, could be contested, the same as a domestic will. (22 Stat. of Ohio, 1824, sec. 12, p. 121; 2 Morehead & Brown's Digest of Ky. Laws, 1834, sec. 13, p. 1544, and sec. 1, p. 1548; 1 Rev. Code of Va. 1819, p. 379.) The law with reference to the admission of copies of wills in evidence while Illinois was under territorial government was adopted from Pennsylvania. Foreign wills could be contested in Pennsylvania. As bearing on this question, see *In re Payne's will, supra; Coalter's Exrs.* v. *Bryan,*

*supra; Opp* v. *Chess*, 204 Pa. St. 401; *Heister* v. *Lynch*, 1 Yeates, 108. Would it be reasonable to construe these sections of the statute (taken literally in 1829 from States where foreign wills could be contested the same as domestic wills) as making such a radical departure from the then general rule and giving to foreign wills greater force and effect as to the title to real estate than to wills executed in Illinois?

The right to contest the validity of a will of real estate is not local. Such a contest is incidental to the property and the parties in the State where the property is situated. (*Sneed* v. *Ewing, supra.*) No judgment entered in another State could in any way affect such property without the sanction of the laws of the domestic State. The filing of a copy, duly authenticated according to said section 9, for record with the clerk of the probate or county court under section 2 gives the same force and effect to the copy of the will thus recorded as an original will duly filed and probated under said section 2. After such record the same proceedings can be taken concerning the one as the other.

The substance of present section 10 with reference to the probate of foreign wills here by original proof the same as domestic wills, regardless of whether such foreign wills had been probated in the other jurisdictions, was first incorporated into our statutes in 1855. (Laws of 1855, p. 44.) Counsel for appellee concedes that if such a foreign will be proved and probated here the same as a domestic will it can be contested under section 7. To reach this conclusion requires a different meaning to be given to "aforesaid," in section 7, from that contended for by appellee. Appellee's contention as to the proper construction of section 9 would lead to this absurdity: that if a foreign will were probated in another State and again probated here it could be contested here, but if it were probated in a foreign State and an authenticated copy filed with the clerk of the probate or county court (although this latter would have the same ef-

fect on all future proceedings as an original probate here)
the will in that case could not be contested here. If sec-
tion 9 had been inserted in the act on wills as a provision
or section preceding section 7, appellee's argument on this
question would have no basis. The fact that the provision
as to filing authenticated copies of wills follows the provi-
sion as to contesting wills does not, we think, put the con-
struction upon the word "aforesaid" in section 7 contended
for by appellee. Even if it did, a reading of sections 9
and 2 together, in the light of all the other provisions of the
act on wills, clearly includes the wills provided for in sec-
tion 9 as among those that are "probated" under the provi-
sions of section 2. The term "probate," when strictly used,
relates to proving the will before the officer or tribunal hav-
ing jurisdiction to determine its validity. In common usage,
however, the word is often used as applying to any of the
incidents of administration. (32 Cyc. 403; 6 Words and
Phrases, 5627, 5628.)

Counsel for appellee contends that the decisions in *Stull*
v. *Veatch,* 236 Ill. 207, and *Amrine* v. *Hamer,* 240 id. 572,
decide the contrary. We think otherwise. Both of those
cases were bills to partition real estate. In neither of them
was there any question of contesting a will. In *Amrine* v.
*Hamer* it was decided that a foreign will duly probated in
another State (a duly authenticated copy having been re-
corded in this State) need not be probated in Illinois or
have the formalities entitling it to probate here in order to
enable it to pass the title to land here. In *Stull* v. *Veatch,*
*supra,* according to the allegations in the bill, no instrument
purporting to be a will had been filed in this State or in the
recorder's office. The court, in that case, did not deem the
allegations of the bill of such a nature as to allow it to be
considered a bill to contest the will. It was decided in that
case that it was an attempt by a bill in partition to nullify
by collateral attack proceedings by which the will was pro-
bated in a foreign jurisdiction, and the opinion stated, on

page 212: "Whatever might be the effect of a direct attack, it cannot. be attacked collaterally, as is attempted in this case." *Amrine* v. *Hamer* was also a collateral attack.

It is a general principle of law that a collateral attack is not permitted to be made upon a judgment or order of court by anyone bound thereby, and this general rule applies to the probate of wills. (Page on Wills, sec. 440.) Modern statutes generally provide for attack upon probate by means of a bill or by an action to contest the will. (Page on Wills, sec. 337.) Under our statutes, as construed by this court, a contest of a will must be held to be a direct attack and not collateral. (*Purdy* v. *Hall,* 134 Ill. 298; *Bowen* v. *Allen,* 113 id. 53; *Keithley* v. *Stafford,* 126 id. 507. See, also, *Stevens* v. *Oliver,* 200 Mo. 492, and *Cohen* v. *Herbert,* 205 id. 537.) In a contest as to the validity of a will under said section the issue to be submitted to the jury is a new and original question, to be determined exclusively from the evidence before them. The trial is *de novo,* without regard to the fact that the instrument has been admitted to probate. (*Rigg* v. *Wilton, supra; Craig* v. *Southard,* 148 Ill. 37.) A bill to remove a cloud on title or to partition land would be a collateral attack upon the foreign probate, whereas a bill to contest the will would be a direct attack. If this contest should be successful it will have no effect on said will or the probate thereof in the State of Michigan, where it was formerly probated. It will only prevent the will operating on the real estate in this State, and will leave that to be governed by our statute regulating the descent of real property. *Evansville Ice and Cold Storage Co.* v. *Winsor,* 148 Ind. 682.

Our conclusion is that the provisions of said section 7 with reference to contests apply to any will, or authenticated copy thereof filed with the clerk, as provided for in said section 2, and upon which letters of administration are authorized to be issued under the provisions of said section 2.

This bill was filed within one year after the time the authenticated copy of the instrument in question was filed for record with the probate clerk of Cook county. The bill being one to contest a will, under the construction we have placed upon the statute the superior court should have over-ruled the demurrer.

The decree of the superior court must be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*

VICKERS, C. J., and DUNN and COOKE, JJ., dissenting.